**Jose GUERRIDO, Libellant, Appellant,**

v.

**ALCOA STEAMSHIP CO., Inc., et al., Appellees.**

**No. 5036.**

United States Court of Appeals First Circuit.

June 8, 1956.

Jerome Golenbock, New York City, with whom Donald S. Sherwood, Harvey B. Nachman and Golenbock & Komoroff, New York City, were on brief, for appellant.

Jose L. Novas, San Juan, P. R., with whom Charles R. Hartzell, Rafael O. Fernandez, P. Juvenal Rosa, Vicente M. Ydrach and Jaime Pieras, Jr., San Juan, P. R., were on brief, for Skibs A/S Carona, appellee.

Earle T. Fiddler, Jose G. Gonzalez, Tomas I. Nido, Carlos J. Faure and Richard J. Gonzalez, Fiddler, Gonzalez & Nido, San Juan, P. R., on brief, for Alcoa Steamship Co., Inc., appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

The libellant, an American citizen residing in Puerto Rico, was injured on August 5, 1953, while working as a longshoreman aboard the M. V. Carona, a Norwegian vessel which was then discharging cargo at San Juan. The libel-lant was an employee of a stevedoring company with which the respondents had contracted to handle the cargo. He brought the present suit in admiralty in rem against the vessel and in personam against Skibs A/S Carona, her owners, J. H. Winchester & Co., their agents, and Alcoa Steamship Company, charterers of the vessel, seeking damages for his injuries alleged to have been caused by the unseaworthiness of the vessel and the negligence of her master and crew. The libel was filed in the District Court for the Southern District of New York and was transferred by that court to the District Court for the District of Puerto Rico under section 1404(a) of title 28, United States Code. Answers were filed in the latter court and respondent Alcoa Steamship Company also moved to dismiss the libel as to it upon the ground that it was not liable to the libellant because it was a time charterer without control of the vessel or responsibility for its operation. The district court dismissed the libel as to the vessel and all the respondents upon the ground that the substantive admiralty law of the United States, upon which the libellant's suit is based, is inoperative in Puerto Rican waters. Guerrido v. The M. V. Corona, D.C., 134 F.Supp. 459. This appeal by the libellant followed.

The libellant conceded at bar that respondent Alcoa Steamship Company was not liable to him because it was a time charterer not in control of the vessel or its operation and that, on this ground, the dismissal of the libel as against Alcoa was not erroneous. We will accordingly direct our attention solely to the dismissal of the libel as against the vessel and the other respondents. This action by the court was based, as we have said, upon the proposition that the substantive admiralty law of the United States is inoperative in the navigable waters of the Commonwealth of Puerto Rico. Since the libel sought recovery under that law for injuries suffered in those waters the district court concluded that the libellant had failed to show legal support for his cause of action and accordingly dis-

missed the libel. In so ruling the district court relied upon the opinion of this court in Lastra v. New York & Porto Rico S. S. Co., 1 Cir., 1924, 2 F.2d 812. It must be conceded that the rationale of that opinion supports the district court's action. However, in view of the libellant's earnest argument we have re-examined the question and we have reached the conclusion that the broad proposition that the admiralty and maritime law of the United States is not in force to any extent in the navigable waters of Puerto Rico which we laid down in the Lastra case cannot be sustained.

 The rules of the maritime law have been developed by the commercial nations of the world over a period of many centuries. The necessities of international trade and commerce have dictated that this development should be along rather uniform lines in the several maritime nations. Thus in a very real sense a body of general maritime law has developed internationally. But in each nation the maritime law is operative only as it is adopted by the law and usage of that country and with such modifications as it thinks proper. In the United States the federal Constitution adopted and established the rules of the general maritime law as part of the laws of the United States subject to the power of Congress and the courts to modify or develop them to meet the special needs of our nation.[1] Since Puerto Rico is neither a state of the union nor a territory which has been incorporated into the union pre-liminary to statehood it is true that all the provisions of the federal Constitution are not necessarily in force within its borders.[2] At the time of the cession of Puerto Rico to the United States by Spain in 1899 its maritime law was that prescribed in Book III, entitled "Maritime Commerce", of the Spanish Code of Commerce of 1886.[3] This Spanish maritime code differed in many respects from the American maritime law, however. One of the purposes of the establishment by the Constitution of the rules of the general maritime law as part of the laws of the United States was to preserve harmony and uniformity in maritime matters in both the international and interstate relations of the country.[4] This purpose was best to be promoted if the rules of maritime law thus established were to be regarded as applicable and enforceable throughout the whole extent of the navigable waters over which the United States has authority to exercise jurisdiction, which after 1899 included the navigable waters of Puerto Rico. Indeed when we recall that of the six "great districts" into which our seacoasts and navigable rivers are divided for the purpose of administering the domestic shipping laws, three comprise outlying islands and territories,[5] we see just how important it was to the attainment of the constitutional ideal of harmony and uniformity in the rules governing admiralty and maritime matters that these rules be applicable in all the areas under the American flag, those not destined for incorporation into the Union

1. The Lottawanna, 1874, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654; The Western Maid, 1922, 257 U.S. 419, 432, 42 S.Ct. 159, 66 L.Ed. 299.

2. Balzac v. People of Porto Rico, 1922, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627. See Granville-Smith v. Granville-Smith, 1955, 349 U.S. 1, 5, 75 S.Ct. 553, 99 L.Ed. 773.

3. See Walton's Civil Law in Spain and Spanish America, 1900, pp. 516–518.

4. The Lottawanna, 1874, 21 Wall. 558, 574–575, 88 U.S. 558, 574–575, 22 L.Ed. 654; Workman v. City of New York, 1900, 179 U.S. 552, 558–559, 21 S.Ct. 212, 45 L.Ed. 314; Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086; Chelentis v. Luckenbach S.S. Co., 1918, 247 U.S. 372, 382, 38 S.Ct. 501, 62 L.Ed. 1171; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 161, 40 S.Ct. 438, 64 L.Ed. 834; State of Washington v. Dawson & Co., 1924, 264 U.S. 219, 227–228, 44 S.Ct. 302, 68 L.Ed. 646; Parker v. Motor Boat Sales, 1941, 314 U.S. 244, 248, 62 S.Ct. 221, 86 L.Ed. 184; Davis v. Department of Labor, 1942, 317 U.S. 249, 252, 63 S.Ct. 225, 87 L.Ed. 246. See 1 Benedict on Admiralty, 6th ed., § 1.

5. 46 U.S.C.A. §§ 293, 293a.

as well as the states and incorporated territories.

 Under the Constitution Congress has power to legislate in the sphere of admiralty and maritime law.[6] A consideration of the Congressional enactments will, therefore, throw light on the question under discussion. The first enactment which has significance is the Foraker Act of 1900, Puerto Rico's first Organic Act, section 9 of which required the federal Commissioner of Navigation to "make such regulations * * * as he may deem expedient for the nationalization of all vessels owned by the inhabitants of Porto Rico on [April 11, 1899], * * * and for the admission of the same to all the benefits of the coasting trade of the United States; and the coasting trade between Porto Rico and the United States shall be regulated in accordance with the provisions of law applicable to such trade between any two great coasting districts of the United States."[7] The Supreme Court has stated that by this Act "it was evidently intended, not only to nationalize all Porto Rican vessels as vessels of the United States, and to admit them to the benefits of their coasting trade, but to place Porto Rico substantially upon the coast of the United States, and vessels engaged in trade between that island and the continent, as engaged in the coasting trade." Huus v. New York & P. R. Steamship Co., 1901, 182 U.S. 392, 396, 21 S.Ct. 827, 829, 45 L.Ed. 1146. Section 9 of the Foraker Act thus showed a Congressional intent that the federal maritime law, at least in the field of domestic shipping, should be applicable in Puerto Rico. This was followed up by the Act of May 12, 1906, c. 2453,[8] which amended section 4348 of the Revised Statutes so as expressly to constitute Puerto Rico, as well as Alaska and Hawaii, great districts for the administration of the domestic shipping laws. The American maritime law is unquestionably in force in Alaska[9] and Hawaii[10] since they are both incorporated territories to which the Constitution and laws of the United States are fully applicable. The inclusion of Puerto Rico as a great district on a parity with these other territories is, therefore, significant as indicating that Congress intended the maritime law of the United States to be applicable in Puerto Rico just as in Alaska and Hawaii.

By section 13 of the Foraker Act of 1900 many kinds of public property in Puerto Rico which had been acquired from Spain were placed under the control of the insular government established by the Act but "harbor areas or navigable waters" were expressly excluded. Construing this and other relevant statutes an opinion of the Attorney General rendered in 1901 concluded that the coastal waters, harbors and other navigable waters of Puerto Rico were waters of the United States and as such were subject to national jurisdiction over them. The Attorney General accordingly held that the Rivers and Harbors Act of 1899 extended to Puerto Rican waters.[11] And in a subsequent opinion the Attorney General stated: "From all this it is certain that the ordinary national control of the marine belt affects the coastal waters of Porto Rico as well as those of

6. Gibbons v. Ogden, 1824, 9 Wheat. 1, 188, 22 U.S. 1, 188, 6 L.Ed. 23; The Lottawanna, 1874, 21 Wall. 558, 577, 88 U.S. 558, 577, 22 L.Ed. 654; Lord v. Steamship Co., 1880, 102 U.S. 541, 544, 26 L.Ed. 224; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 164, 40 S.Ct. 438, 64 L.Ed. 834.

7. 31 Stat. 79; 48 U.S.C.A. § 744.

8. 46 U.S.C.A. § 293.

9. The Coquitlam v. United States, 1896, 163 U.S. 346, 348, 16 S.Ct. 1117, 41 L.Ed. 184; Rasmussen v. United States, 1905, 197 U.S. 516, 25 S.Ct. 514, 49 L.Ed. 862.

10. Territory of Hawaii v. Mankichi, 1903, 190 U.S. 197, 215, 23 S.Ct. 787, 47 L.Ed. 1016; Inter-Island Steam Nav. Co. v. Territory of Hawaii, 9 Cir., 1938, 96 F.2d 412, affirmed 305 U.S. 306, 59 S.Ct. 202, 83 L.Ed. 189; Duncan v. Kahanamoku, 1946, 327 U.S. 304, 317, 66 S.Ct. 606, 90 L.Ed. 688; Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 376, 69 S.Ct. 606, 93 L.Ed. 741.

11. 23 Op.Atty.Genl. 551.

any State or any other Territory of the United States." [12] Both opinions were quoted with approval in Gromer v. Standard Dredging Co., 1912, 224 U.S. 362, 368, 32 S.Ct. 499, 501, 56 L.Ed. 801, in which the Supreme Court summarized the matter in these words: "In other words, the jurisdiction of the United States over those [Puerto Rican] waters was the jurisdiction that the United States had over all other navigable waters, an exercise of which the river and harbor act was an example."

It thus appears that almost from the day of the Spanish cession of Puerto Rico to the United States it was recognized that the navigable waters of the island were to be regarded as navigable waters of the United States subject to the federal jurisdiction. While the statutes and opinions to which we have referred dealt primarily with the exercise of admiralty and maritime powers by the federal government in Puerto Rican waters we find nothing in them to suggest that the rules of the maritime law of the United States were not equally applicable in those waters to determine the rights and liabilities of private persons. There is no suggestion anywhere that the former Spanish maritime law should be continued in force in those waters. On the contrary the strong constitutional requirement of uniformity and harmony in this field, to which we have referred, compels the conclusion that the general rules of maritime law as understood in the United States followed the flag to Puerto Rican waters. And that Congress intended that such rules were to be enforceable there is indicated by the fact that section 34 of the Foraker Act created a district court of the United States for Puerto Rico (now the United States District Court for the District of Puerto Rico) with "the ordinary jurisdiction of district courts of the United States" which then as now included jurisdiction "Of all civil causes of admiralty and maritime jurisdiction". [13]

■■ In the Lastra case we observed that by section 8 of the Jones Act of 1917, which was the second Organic Act of Puerto Rico, the "harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Porto Rico and the adjacent islands and waters, now owned by the United States and not reserved by the United States for public purposes" were placed under the control of the government of Puerto Rico to be administered in the same manner as the property enumerated in section 7. [14] Section 7 provided that the property enumerated in that section was placed under the control of the government of Puerto Rico "to be administered for the benefit of the people of Porto Rico; and the Legislature of Porto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable". [15] We also noted that under section 37 of the Jones Act the legislative authority of Puerto Rico extends "to all matters of a legislative character not locally inapplicable". [16] Our conclusion was that these three sections gave the Puerto Rican Legislature general legislative power concerning Puerto Rican waters. To that conclusion we adhere. Certainly by these provisions Congress evidenced an intent to confer such power upon the insular Legislature to the extent of its constitutional authority to do so. [17]

---

12. 23 Op.Atty.Genl. 564, 566.

13. Rev.Stat. § 563, Eighth; Judicial Code of 1911 § 24(3); 28 U.S.C. (1952 Ed.) § 1333(1).

14. 48 U.S.C.A. § 749.

15. 48 U.S.C.A. § 747.

16. 48 U.S.C.A. § 821.

17. That there are limits to the power of Congress to make variations and exceptions and to delegate legislative power in the field of admiralty and maritime law has been made clear by the Supreme Court. Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 164, 40 S. Ct. 438, 64 L.Ed. 834; State of Wash-

However, the provisions of section 7, 8 and 37 of the Jones Act must be read in the light of the fact that, as we have seen, the general maritime law of the United States was already in force in Puerto Rican waters at the time when they were enacted. While conferring power upon the insular Legislature to deal with this field and to the extent of legislation validly enacted therein to supersede inconsistent rules of the federal maritime law, the Jones Act did not purport to repeal forthwith as to Puerto Rico the existing rules of that law. On the contrary section 8 of the Act contained the specific proviso "That all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters and to its adjacent islands and waters". Sections 7, 8 and 37 of the Jones Act remain in force today as a part of the Puerto Rican Federal Relations Act. We conclude, therefore, that the rules of the admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation. This is not to say, of course, that Puerto Rican legislation could thus supplant a rule of maritime law which Congress in the exercise of its constitutional power has expressly made applicable to Puerto Rican waters.

The present suit was brought by the libellant under the rules of American admiralty law which authorize a longshoreman working on a vessel on navigable waters who is injured thereon by reason of the unseaworthiness of the vessel or the negligence of the master or members of the crew to recover damages for the injuries thus sustained.[18] We have been referred to no Puerto Rican statute which has supplanted or modified these rules of the maritime law. They must, therefore, be regarded as in force in Puerto Rico and as furnishing adequate legal support for the libellant's suit.

■■ The district court, however, held that the Workmen's Accident Compensation Act of Puerto Rico applies to his case and lays down conditions precedent to his suit which he has not met. In the Lastra case, this court held that the Workmen's Accident Compensation Act of Puerto Rico which was then in force [19] applied to maritime workers. We adhere to that view. For we still think, as we indicated in the Lastra case, that Congress intended by section 8 of the Jones Act to give the Legislature of Puerto Rico full power to provide compensation for marine workers injured in Puerto Rican waters to the exclusion of the remedies against their employers provided by the American maritime law. It is very persuasive of this intent that Congress at about the same time as it passed the Jones Act sought to grant similar authority to the states to provide workmen's compensation for maritime work-

ington v. Dawson & Co., 1924, 264 U.S. 219, 227, 44 S.Ct. 302, 68 L.Ed. 646.

But it may well be that today the Supreme Court would take a more liberal view of the congressional power in this field than was done by the five justices comprising the majority in the Jensen case. See Parker v. Motor Boat Sales, 1941, 314 U.S. 244, 248, 62 S.Ct. 221, 86 L.Ed. 184.

18. Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

19. Act of February 25, 1918, No. 10. This was succeeded by the Act of May 14, 1928, No. 85, which in turn was succeeded by the Workmen's Accident Compensation Act now in force, the Act of April 18, 1935, No. 45.

ers.[20] The fact that this action was later held by the Supreme Court to be abortive as an unconstitutional delegation of Congressional power to the States[21] does not detract from its weight as evidence of the intention of that body. Nor does it indicate a similar lack of power to act with respect to Puerto Rico. For what Congress could not constitutionally delegate to the legislature of a state as the organ of an independent sovereignty, it might well be able to delegate to the legislature which it had created for a territory which it had organized.[22] There is nothing in the Congressional actions which led to the establishment of the Commonwealth of Puerto Rico to suggest that Congress intended the Commonwealth to have less power of legislation in the field of maritime law than the territorial legislature had theretofore enjoyed. We conclude, therefore, that the Workmen's Accident Compensation Act of the Commonwealth of Puerto Rico covers maritime workers injured or killed in the territorial waters of Puerto Rico except to the extent that it may have been superseded as to any class of maritime workers by compensation legislation passed by Congress and intended to apply to all navigable waters of the United States.

In 1927, more than two years after the decision of the Lastra case,

Congress did pass legislation in this field, the Longshoremen's and Harbor Workers' Compensation Act.[23] But section 3 of that Act provided that compensation should be payable under it only, inter alia, "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law"[24] and section 2(8) defined "State" as including a Territory.[25] We think that by the language which we have quoted Congress intended to prevent its new compensation act from superseding the existing Puerto Rican compensation act with respect to longshoremen, such as the present libellant, who are injured in Puerto Rican waters.[26] For, as we have shown, recovery in these cases can validly be provided by the Puerto Rican statute. And the fact is that such compensation has been so provided in the past.[27]

We turn, then, to the Workmen's Accident Compensation Act of Puerto Rico[28] to ascertain whether that act has laid down any conditions precedent to suit by the libellant against the vessel and the respondents named in this suit, the failure to comply with which would justify the action of the district court in dismissing the suit on the pleadings. Section 31 of that Act relates to suits by injured workmen against parties other than their employers alleged to be

---

20. Act of October 6, 1917, 40 Stat. 395, which amended sections 24(3) and 256(3) of the Judicial Code of 1911 by adding to the "saving to suitors" clause appended to the grant of admiralty jurisdiction to the district courts the following "and to claimants the rights and remedies under the workmen's compensation law of any State."

21. Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; State of Washington v. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L. Ed. 646.

22. See, for example, People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235; Inter-Island Steam Nav. Co. v. Territory of Hawaii, 1938, 305 U.S. 306, 59 S.Ct. 202, 83 L. Ed. 189; National Labor Relations Board v. Gonzalez Padin Co., 1 Cir., 1947, 161

F.2d 353, 355; Buscaglia v. Ballester, 1 Cir., 1947, 162 F.2d 805, 806.

23. 33 U.S.C.A. §§ 901 et seq.

24. 33 U.S.C.A. § 903.

25. 33 U.S.C.A. § 902(8).

26. See Inter-Island Steam Nav. Co. v. Territory of Hawaii, 1938, 305 U.S. 306, 312, 59 S.Ct. 202, 83 L.Ed. 189.

27. In United Porto Rican Sugar Co. v. District Court, 1933, 44 P.R.R. 904, the Supreme Court of Puerto Rico upheld the application to a maritime worker injured on shipboard in Puerto Rican waters of the Workmen's Accident Compensation Act then in force in Puerto Rico.

28. Act of April 18, 1935, No. 45, 11 L.P. R.A. § 1 et seq.

responsible for their injuries. That section provides:

"In cases where the injury, the occupational disease, or the death entitling the workman or employee or their beneficiaries to compensation in accordance with this chapter has been caused under circumstances making third persons responsible for such injury, disease, or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third person responsible for said injury, disease, or death, within one year following the date of the final decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action in the manner following:

"When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person in cases where the State Insurance Fund, in accordance with the terms of this chapter, is obliged to compensate in any manner or to furnish treatment, the Manager of the State Insurance Fund shall subrogate himself in the rights of the workman or employee or of his beneficiaries, and may institute proceedings against such third person in the name of the injured workman or employee or of his beneficiaries, within the ninety days following the date of the final decision of the case, and any sum which as a result of the action, or by virtue of a judicial compromise, may be obtained in excess of the expenses incurred in the case shall be delivered to the injured workman or employee or to his beneficiaries entitled thereto. The workman or employee or his beneficiaries shall be parties in every proceeding instituted by the Manager under the provisions of this section, and it shall be the duty of the Manager to serve written notice on them of such proceedings within five days after the action is instituted.

"If the Manager should fail to institute action against the third person responsible within the term of ninety days from the date of the final decision of the case, the workman or employee or his beneficiaries shall be fully at liberty to institute such action in their behalf, without being obliged to reimburse the State Insurance Fund for the expenses incurred in the case.

"The injured workman or employee or his beneficiaries may not institute any action, nor may compromise any right of action they may have against the third person responsible for the damages, until after the expiration of ninety days from the decision of the case by the Manager of the State Insurance Fund.

"No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible, made before the expiration of the term of ninety days after the decision or after the expiration of said term, if the Manager has filed his complaint, shall be valid or effective in law unless the expenses incurred by the State Insurance Fund in the case are first paid. No judgment shall be entered in suits of this nature, and no compromise whatsoever as to the rights of the parties to said suits shall be approved, without making express reserve of the rights of the State Insurance Fund to reimbursement of all expenses incurred; *Provided,* That the secretary of the court taking cognizance of any claim of the nature above described shall notify the Manager of the State Insurance Fund any order entered by the court which affects the rights of the parties to the case, as well as the final disposition thereof.

·.·"The Manager of the State Insurance Fund may, with the approval of the Secretary of Labor, compromise as to his rights against a third person responsible for the damages; *It being understood, however,* that no extra-judicial compromise shall affect the rights of the workman or employee, or of his beneficiaries, without their express consent and approval.

·"Any sum obtained by the Manager of the State Insurance Fund through the means provided in this section shall be covered into the State Insurance Fund for the benefit of the particular group into which was classified the occupation or the industry in which the injured or dead workman or employee was employed."[29]

It will be observed that the statute recognizes the right to an action against third parties responsible for an employee's injuries. It is to be prosecuted in the employee's name either by the Manager of the State Insurance Fund or by the employee personally, depending on when it is brought. The present suit was brought in the claimant's name as the statute contemplates. Whether it is being prosecuted by the claimant personally or by the Manager of the State Insurance Fund does not appear from the libel and need not do so for it is a matter involving the subrogation rights of the Manager and the disposition of the proceeds of the litigation with which the respondents are not concerned. In either case the judgment will be res judicata as between the respondents and the libellant.

 The other significant provision of the Puerto Rican Act is that a suit against third parties must be instituted within one year following the date of the final decision of the employee's case by the Manager of the State Insurance Fund. In considering the possible effect of this provision of the Puerto Rican law we must remember that the proceeding before us is a suit in admiralty in a federal court seeking to enforce a right given by the federal maritime law. In such a suit, unless an Act of Congress has imposed a limitation upon the time for commencing it, matters of delay are left to the discretion of the district court in accordance with the equitable doctrine of laches.[30] The district courts frequently follow the analogy of state statutes of limitations in determining whether such suits are barred by laches[31] but they are not bound by such statutes.[32] Moreover where, as here, laches does not appear from the face of the libel it is an affirmative defense which must be asserted by the respondents.[33]

Our conclusion is that the libel states a cause of action under the federal maritime law in force in Puerto Rico which is within the jurisdiction of the district court. Whether, if the libellant should recover damages in the suit, the Manager of the State Insurance Fund of Puerto Rico will be entitled to subrogation is a question which need not be decided unless and until such damages are awarded by the district court.

29. 11 L.P.R.A. § 32.

30. The Key City, 1871, 14 Wall. 653, 81 U.S. 653, 20 L.Ed. 896; Gardner v. Panama R. Co., 1951, 342 U.S. 29, 30–31, 72 S.Ct. 12, 96 L.Ed. 31. See 3 Benedict on Admiralty, 6th Ed., § 462.

31. Davis v. Smokeless Fuel Co., 2 Cir., 1912, 196 F. 753, 755–756. See 3 Benedict on Admiralty, 6th Ed., § 463.

32. Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, 693, certiorari denied 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535; Kane v. Union of Soviet Socialist Republics, 3 Cir., 1951, 189 F.2d 303, 305, certiorari denied 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676; Taylor v. Crain, 3 Cir., 1952, 195 F.2d 163.

33. Stewart v. United States Shipping Board E. F. Corporation, D.C.E.D.N.Y., 1925, 7 F.2d 676, 679; United States v. Alex Dussel Iron Works, 5 Cir., 1929, 31 F.2d 535, 537. See annotation, 173 A.L.R. 326, 368–369.

The decree of the district court will be reversed and the cause will be remanded to the district court for further proceedings not inconsistent with this opinion.