PUERTO RICO WATER RESOURCES AUTHORITY, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent; COMMERCIAL INSURANCE COMPANY, Intervener.

No. C-66-67.        Decided April 24, 1967.

*José Antonio Arabía* and *Carlos M. Lamoutte* for petitioner. *Rieckehoff, Calderón, Vargas & Arroyo* for intervener.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

In the San Juan Part of the Superior Court, a civil action was filed on December 12, 1963 by the heirs of the deceased worker, Camilo Marrero, against Gahagan Western Hemisphere Dredging Corporation, Insular Underwriters' Corporation, the Puerto Rico Water Resources Authority, and the United States Department of Labor. It was alleged that the laborer died as a result of a labor accident upon coming in contact with a high-voltage cable of the Puerto Rico Water Resources Authority; that the laborer worked for the Gahagan Western Hemisphere Dredging Corporation, a corporation which carried out dredging works in the bay of San Juan and his death was due to the negligence of the corporation and of the Water Resources Authority, or of one of them. That codefendant, Insular Underwriters' Corporation, was Gahagan's insurer. Judgment was requested against code-

fendant corporations and the insurer for damages for $120,000 for the death of said laborer.

The complaint was accompanied by an addendum number one which is a copy of a letter sent by the Insular Underwriters' Corporation to the Water Resources Authority on November 18, 1963, informing the latter that it was the insurer of Gahagan Western Hemisphere Dredging Corporation to answer for compensations to workers and for liability to employees under policy issued by Commercial Insurance Co.; that on December 7, 1962, the laborer worked on the backyard of Rexach building in Pueblo Viejo and was electrocuted upon coming in contact with a loose high-voltage wire, property of and under the exclusive control of the Water Resources Authority; that the Authority was advised that the claim for compensation for a labor accident filed against said insurer had been challenged and was pending decision of the Deputy Commissioner, and that in case that the insurer had to pay said claim it would be subrogated against the Authority, and to take that fact into account in case of any settlement with the laborer's heirs.

The Authority answered the complaint on the merits denying liability for negligence. The Insular Underwriters' moved for the dismissal of the complaint on the ground that it did not state facts, inasmuch as the employer having insured the payment of the compensation to the laborer, said remedy is exclusive as to the employer and its insurer, Insular Underwriters' Corporation. The motion for dismissal was denied and the Insular Underwriters' answered then on the merits, denied the facts and raised as an affirmative defense the same question of law dismissed.

After several incidents and hearings in relation to interrogatories, on June 29, 1965, Commercial Insurance Company moved for intervention in the action, which was granted, and filed a third-party complaint alleging that the laborer had died upon receiving an electric discharge as a result

of the fault and negligence of the Water Resources Authority; that the intervener, because of a compensation policy for labor accidents covering the workers of Gahagan Western Hemisphere Dredging Corporation was bound to pay the plaintiffs in the action the amount of $42,757.18 and was subrogated to plaintiffs' rights and cause of action up to that amount.

On July 29, 1965, Insular Underwriters' Corporation appeared in motion for summary judgment and alleged that the laborer's death occurred in a labor accident when he worked for the corporation which was dredging the port of San Juan; that the appearing party was the employer's insurer for labor accidents; that the United States Department of Labor, through the Workmen's Accident Compensation Bureau, fixed a compensation in behalf of the dependents in the amount of $42,757.18 and that, plaintiffs having received such compensation, said remedy was exclusive as to the employer and the insurer. Motion for summary judgment dismissing the complaint as a question of law as to the employer and the insurer was filed. The decision of the Federal Department of Labor to the effect that the laborer was an employee, outside of the United States, of an employer under contract entered into with the United States whose liability to the laborer is insured by Insular Underwriters' was attached to the motion.

On August 11, 1965, the Authority filed a motion opposing the intervention of Commercial Insurance Company which has all the effects of being a motion to dismiss the third-party complaint. It adduced the following grounds: (a) that the accident to which the third-party complaint refers is not an accident covered and compensable as a labor accident under any federal act; (b) that Gahagan Western Hemisphere Dredging Corporation was an uninsured employer and (c) that Commercial Insurance Company is not em-

powered by law to be subrogated in any amount to plaintiffs' or employer's rights.

On August 25, 1965, the Authority filed a motion for summary judgment for the dismissal of the complaint on the ground that the employer and the Authority were solidary debtors of said plaintiffs' claim and the employer's payment to them constituted an extinguishment of the debt and the claim.

Everything in the record shows that Gahagan Western Hemisphere Dredging Corporation was not an *insured employer* under the Puerto Rico workmen's accident compensation laws. There is a document in the record which constitutes a decision of the Manager of the State Insurance Fund in which, after this worker's accident was investigated, he concludes that from the investigation it appears that the laborer was injured when he worked as an employee under a contract between the employer and the federal government and in view of this fact the Manager decided that he lacked jurisdiction to take cognizance of this case because the federal labor accident statute was applicable thereto.

On December 14, 1965 the trial court entered the following:

### "ORDER AND JUDGMENT

After hearing the parties and studying the different briefs submitted on the incidents under consideration by the court and which are adjudged hereinafter, the Court hereby

DECIDES:

1. To deny the petition for summary judgment filed by the Puerto Rico Water Resources Authority.

2. To grant the intervention of Commercial Insular Company and to order defendant, Puerto Rico Water Authority to answer the complaint within the term of 10 days after service of notice of this Order.

3. The Court orders to strike the United States Department of Labor as defendant party in this action.

4. To enter Summary Judgment dismissing the complaint against Insular Underwriters' Corporation and Gahagan Western Hemisphere Dredging Corporation, because it is proper at law."

At the request of the Water Resources Authority we issued this writ of certiorari to review the judgment refusing to dismiss the third-party complaint and ordering that it be answered on the merits.

■ The Act of Congress of August 16, 1941, 55 Stat. 622, 42 U.S.C.A. § 1651, provided for the compensation for disability or death of persons employed at military, air, and naval bases outside the United States. It was prescribed in its § 1(a) that the provisions of the Longshoremen's and Harbor Workers' Compensation Act shall apply in respect to the injury or death of any employee engaged in any employment:—

(1) at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government; or

(2) upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States (including the Base at Guantanamo Bay, Cuba; and the Canal Zone); or

(3) upon any public work in any Territory or possession outside the continental United States (including the Base at Guantanamo Bay, Cuba; and the Canal Zone), if such employee is engaged in employment at such place under the contract or subcontract thereof of a contractor with the United States. . . .

(4) under a contract entered into with the United States or any executive department, or agency thereof where such contract is to be performed outside the continental United States and at places not within the areas described in the foregoing subparagraphs (1), (2) and (3) for the purpose

of engaging in public work, and such contract shall contain provisions requiring that the contractor or subcontractor shall provide on behalf of employees engaged in such public work the payment of compensation and other benefits under the act, and shall maintain in full force and effect during the term of such contract, and while employees are engaged in work performed thereunder, a security for the payment of such compensation and benefits;

(5) under a contract approved and financed by the United States or any executive department, or agency thereof, or any subcontract where such contract is to be performed outside the continental United States, under the Mutual Security Act of 1954, with certain exceptions; and such contract shall contain provisions requiring that the contractor shall provide on behalf of employees engaged in work under such contract the payment. of compensation and other benefits under the act and shall maintain during the term of such contract a security for the payment of such compensation;

(6) outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces . . . . The foregoing provisions govern irrespective of the .place where the injury or death occurs and cover the injury or death occurring to any employee during the transportation to or from his place of employment, where the employer or the United States provides the transportation or cost thereof.

The statute defines "public work" as any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection

therewith at the site of the project. The term "war activities" includes activities directly relating to military operations, and the term "continental United States" means the States and the District of Columbia.

In its § 1(c) this act provides that the liability of an employer, contractor or subcontractor under this act shall be exclusive and in place of all other liability of such employer or contractor to his employees (and their dependents) coming within the purview of this act, under the workmen's compensation laws of any State, Territory or other jurisdiction, irrespective of the place where the contract of hire of such employee may have been made or entered into.

In § 1(d) in defining the term "contractor" for the purposes of this act it is provided that the rights, obligations, liability, and duties of an employer under the Longshoremen's and Harbor Workers' Compensation Act shall be applicable to such "contractor."

Petitioner, the Water Resources Authority, maintains in support of its contention that the accident was covered by our Workmen's Accident Compensation Act; that the employer Gahagan Western Hemisphere Dredging Corp. was an uninsured employer here; that the accident did not occur in navigable waters but on land, nor in a base of the Armed Forces; that Commercial Insurance Co. paid erroneously the compensation determined by the United States Department of Labor or without being bound to do so, and that for that reason it does not have any right of subrogation.[1]

---

[1] Subrogation would fundamentally affect the plaintiff, the worker. What remains of the litigation is an action against the third party who is allegedly the tort-feasor. The employer and its insurer were excluded under the doctrine of the exclusive remedy, in the judgment of December 14, 1965 aforestated, which is final and unappealable. Only in the case that the Authority were found guilty, and the damage were less than $42,757.18, could the Authority be affected in the difference up to that amount, by the subrogation.

Section 3 of the Act of Congress of March 4, 1927, 44 Stat. 1426, Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903, provides that compensation shall be payable under this act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.

Insofar as Puerto Rico is concerned, certain doctrinal rules exist which situate our workmen's compensation statute in its proper place. *Lastra* v. *New York & Porto Rico S.S. Co.*, 2 F.2d 812 (1st Cir.);[2] *Fonseca* v. *Prann*, 282 F.2d 153 (1st Cir.), *cert. den.*, 365 U.S. 860; *Guerrido* v. *Alcoa Steamship Co.*, 234 F.2d 349 (1st Cir.); *Waterman Steamship Corporation* v. *Rodríguez*, 290 F.2d 175 (1st. Cir.). See the ample discussion and study in *Inter Island Shipping Corporation* v. *Industrial Commission*, 89 P.R.R. 635 (1963).

In *Lastra* it was held that our workmen's compensation statute was applicable to the New York & Porto Rico S.S. Co. since, as to the substantive admiralty law, Puerto Rico was not subject to the same limitations as the United States. The decision in *Southern Pacific* v. *Jensen*, 244 U.S. 205, was not applied herein by the Court of Appeals, which reversed the District Court.

In the case of Fonseca the court upheld the judgment of the District Court, 178 F.Supp. 845, dismissing complaints for damages filed by seamen and crew members who were injured while at work on board vessels on navigable waters within the territorial limits of Puerto Rico. The workers were insured under our workmen's accident compensation act and they received compensation. They brought suit against their employers to recover under the Jones Act for

---

[2] Dismissed for lack of jurisdiction, 269 U.S. 536.

negligence, and under the general maritime law for unseaworthiness. The applicability of our statute was held as the exclusive remedy against the employer.

In the case of Guerrido the application of our statute was reaffirmed in holding that the injured workers, employees of a stevedoring company, could file suit against the owner of the vessel as third party responsible for the injuries, remedy granted by our law.

In *Waterman* it was held that the maritime law of the United States is presently in force in the navigable waters of the United States in and around Puerto Rico to the extent that it is not locally inapplicable, and that our workmen's compensation act cannot supplant a general rule of maritime law which Congress made applicable to Puerto Rican waters in common with all other waters of the United States. It was thus held that the general maritime law of unseaworthiness governs in Puerto Rico.

The cases cited do not help petitioner. We are confronting now a specific situation governed also by specific legislation of Congress, the radius of application of which appears clearly from the text of the act. The Act of August 16, 1941 to provide compensation for disability or death to persons employed at military, air, and naval bases outside the United States, 55 Stat. 622, 42 U.S.C.A. §§ 1651 to 1654, was a war legislation for the purpose of protecting the workers who worked under contracts with the United States in any place, including foreign countries, other than the States and the District of Columbia. The term "outside the continental United States" was thus defined. The act made the provisions of the Longshoremen's and Harbor Workers' Compensation Act applicable by reference *except* as otherwise provided.

In *Royal Indemnity Co.* v. *Puerto Rico Cement Corp.*, 142 F.2d 237 (1st Cir.), *cert. den.*, 323 U.S. 756, an action

by *Royal* against Ponce Cement to recover as subrogee the amount paid by the former to an employee injured through the latter's negligence, under the Act of 1941 involved herein, the Court of Appeals held that the provision in "Longshoremen's . . . Act"—§ 3, 33 U.S.C.A. § 903—permitting recovery only where workmen's accident compensation may not validly be provided by state law, was inapplicable in this case where the injury occurred in a military base. It was said that the protection given to the workers by the Act of 1941, 42 U.S.C.A. § 1651, was extended by Congress without regard to local compensation laws. This case decides petitioner's contention. It does not cease to be applicable because the case involved an injury which occurred in a military base. The Act of 1941 is not limited to bases only. It covers any worker employed in any place under a contract entered into with the United States, except in the States and the District of Columbia. Section 1(a)(3), (4), (5), (6) above-copied. See: *Republic Aviation Corporation* v. *Lowe*, 164 F.2d 18, *cert. den.*, 333 U.S. 845; *Lieb* v. *Interior Enterprises, Inc.*, 395 P.2d 32; *Flying Tiger Lines, etc.* v. *Landy*, 250 F.Supp. 282; *O'Keeffe* v. *Pan American World Airways, Inc.*, 338 F.2d 319 (5th Cir.), *cert. den.*, 380 U.S. 951.

Section 1(d) of the Act of 1941, 42 U.S.C.A. § 1651, provides that the employer shall have all the rights, obligations, liability, and duties of an employer under the Longshoremen's . . . Act. Section 5 of this statute, 33 U.S.C.A. § 905, establishes an exclusive remedy against the employer if the latter has insured payment of compensation. If the injury has occurred on account of a third person, and the worker accepts the compensation fixed by the deputy commissioner, an assignment to employer of all rights of the worker is produced. Likewise, the payment of the compensation by the employer into a special fund produces an assignment to employer of the rights of the worker to recover

damages against third persons. The employer may institute proceedings against the third person liable. If the employer is insured and the insurance carrier pays the compensation, the insurance carrier shall be subrogated to all the rights of the employer, pursuant to the provisions of § 33 of the Act of 1927, 33 U.S.C.A. § 933.

█ It is inappropriate to hold as a bare question of law that Commercial Insurance Co. is not entitled to intervene under the theory that the aforesaid legislation is inapplicable. On the other hand, what the record merely shows is a dredging work of the bay of San Juan under a contract entered into with the United States. The Authority, upon answering the complaint, may raise any defense seeking to establish, as a matter *of fact*, that it is not a question of a work covered by the act, and introduce evidence thereon. Therefore, the trial court did not commit error in refusing to dismiss the third-party complaint, as a question of law, and in ordering that the same be answered on the merits.[3]

The writ of certiorari issued will be quashed.

---

[3] *Cf. Alcoa Steamship Co.* v. *Perez Rodriguez*, 376 F.2d 35 (1st Cir.).