AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado; COMMERCIAL INSURANCE COMPANY, interventora.

*Número:* C-66-67     *Resuelto:* 24 de abril de 1967

*José Antonio Arabía* y *Carlos M. Lamoutte,* abogados de la peticionaria; *Rieckehoff, Calderón, Vargas & Arroyo,* abogados de la interventora.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En la Sala de San Juan del Tribunal Superior se interpuso en 12 de diciembre de 1963 acción civil por la sucesión del obrero fallecido Camilo Marrero contra Gahagan Western Hemisphere Dredging Corporation, Insular Underwriters' Corporation, la Autoridad de las Fuentes Fluviales de Puerto Rico y el Departamento del Trabajo de los Estados Unidos. Se alegó que el obrero murió como consecuencia de un accidente del trabajo al venir en contacto con un cable de alto voltaje de la Autoridad de las Fuentes Fluviales de Puerto Rico; que el obrero trabajaba para la Gahagan Western Hemisphere Dredging Corporation, corporación que efectuaba obras de dragado en la bahía de San Juan y su muerte se debió a la negligencia de ésta y de la Autoridad de las Fuentes Fluviales o de alguna de ellas. Que la codemandada Insular Underwriters' Corporation era la aseguradora de Gahagan. Se solicitó sentencia en contra de las corporaciones codemandadas y la aseguradora en resarcimiento de daños por la muerte de dicho obrero en la cantidad de $120,000.

A la demanda se unió un anexo número uno que es copia de una comunicación de Insular Underwriters' Corporation dirigida a la Autoridad de las Fuentes Fluviales el 18 de noviembre de 1963, informándole que era la aseguradora de Gahagan Western Hemisphere Dredging Corporation para responder de compensaciones a obreros y responsabilidad a empleados bajo póliza expedida por Commercial Insurance Co.; que en 7 de diciembre de 1962 el obrero trabajaba en el patio trasero del edificio Rexach en Pueblo Viejo y se electrocutó al hacer contacto con un alambre suelto de alto voltaje propiedad y bajo el dominio exclusivo de la Autoridad de las Fuentes Fluviales; que se informaba a la Autoridad que la reclamación de compensación por accidente de trabajo presentada contra dicha aseguradora había sido impugnada

y estaba pendiente de decisión del Comisionado Federal, y que en caso de que la aseguradora tuviera que pagar dicha reclamación se subrogaría contra la Autoridad, de modo que se tuviera ello en cuenta en caso de cualquier transacción con los herederos del obrero.

La Autoridad contestó la demanda en los méritos negando responsabilidad por negligencia. La Insular Underwriters' solicitó la desestimación de la demanda a base de que no exponía hechos, por cuanto habiendo el patrono asegurado el pago de la compensación al obrero, dicho remedio es exclusivo en cuanto al patrono y a su aseguradora Insular Underwriters' Corporation. La moción de desestimación se declaró sin lugar y la Insular Underwriters' contestó entonces en los méritos, negó los hechos y levantó como defensa afirmativa la misma cuestión de derecho desestimada.

Después de varios incidentes y vistas en relación con interrogatorios, en junio 29, 1965, Commercial Insurance Company solicitó intervención en el pleito, que le fue concedida, e interpuso demanda de intervención alegando que el obrero había fallecido al recibir una descarga eléctrica como consecuencia de la culpa y negligencia de la Autoridad de las Fuentes Fluviales; que la interventora, por razón de una póliza de compensación por accidentes del trabajo cubriendo a los obreros de Gahagan Western Hemisphere Dredging Corporation venía obligada a pagar a los demandantes en el pleito la cantidad de $42,757.18 y se subrogaba en los derechos y causa de acción de los demandantes hasta dicha cantidad.

En 29 de julio de 1965 compareció Insular Underwriters' Corporation en solicitud de sentencia sumaria y alegó que la muerte del obrero sobrevino en un accidente del trabajo cuando trabajaba para la corporación que hacía el dragado del puerto de San Juan; que la compareciente era la aseguradora por accidentes del trabajo del patrono; que el Departamento del Trabajo de los Estados Unidos, por conducto del

Negociado de Compensaciones a Obreros, fijó una compensación a favor de los dependientes en la cantidad de $42,757.18 y que habiendo tenido los demandantes tal compensación, dicho remedio era exclusivo en cuanto al patrono y a la aseguradora. Se solicitó se dictara sentencia sumaria desestimando la demanda como cuestión de derecho en cuanto al patrono y a dicha aseguradora. A la moción se acompañó el dictamen del Departamento del Trabajo federal al efecto que el obrero era empleado fuera de los Estados Unidos de un patrono bajo contrato con los Estados Unidos estando asegurada su responsabilidad para el obrero por Insular Underwriters'.

En agosto 11, 1965, la Autoridad radicó oposición a la intervención de Commercial Insurance Company que tiene todos los efectos de ser una moción para desestimar la demanda de intervención. Adujo como fundamentos: (a) que el accidente a que se refiere la demanda de intervención no es un accidente cubierto y compensable como accidente del trabajo bajo ley federal alguna; (b) que Gahagan Western Hemisphere Dredging Corporation no era un patrono asegurado y (c) que Commercial Insurance Company no tiene facultad en ley para subrogarse por cantidad alguna en los derechos de los demandantes o del patrono.

En agosto 25, 1965, la Autoridad interpuso una solicitud de sentencia sumaria para que se desestimara la demanda por el fundamento de que el patrono y la Autoridad resultaban ser deudores solidarios de la reclamación de dichos demandantes y el pago a ellos por el patrono constituía una extinción de la deuda y reclamación.

Todo indica en los autos que Gahagan Western Hemisphere Dredging Corporation no era un *patrono asegurado* bajo las leyes de compensaciones a obreros de Puerto Rico. Hay un documento en el expediente que constituye una resolución del Administrador del Fondo del Seguro del Estado

en que, después de investigado el accidente de este obrero, concluye que de la investigación aparece que él se lesionó cuando trabajaba como empleado con motivo de un contrato del patrono con el Gobierno Federal y en vista de este hecho resolvió el Administrador que carecía de jurisdicción para entender en este caso por serle aplicable al mismo el estatuto federal por accidentes del trabajo.

En 14 de diciembre de 1965 la Sala sentenciadora dictó la siguiente:

### "RESOLUCION Y SENTENCIA

Oídas las partes y estudiados los distintos alegatos sometidos sobre los incidentes ante la consideración del Tribunal y que más adelante se adjudican, el Tribunal

RESUELVE:

1. Se declare sin lugar la solicitud de sentencia sumaria radicada por la Autoridad de Fuentes Fluviales de Puerto Rico.

2. Se acepta la intervención de la Commercial Insular Company y se ordena a la demandada Puerto Rico Water Authority a contestar la demanda en el término de 10 días a partir de la notificación de esta Resolución.

3. El Tribunal ordena a eliminación como parte demandada en esta acción a United States Department of Labor.

4. Se dicta Sentencia Sumaria desestimando la demanda contra Insular Underwriters' Corporation y Gahagan Western Hemisphere Dredging Corporation, por ser la misma procedente en derecho."

A petición de la Autoridad de las Fuentes Fluviales expedimos el presente recurso de *certiorari* para revisar el fallo que se negó a desestimar la demanda de intervención y ordenó que la misma fuera contestada en los méritos.

■ La Ley del Congreso de 16 agosto de 1941, 55 Stat. 622, 42 U.S.C.A. § 1651, dispuso para la compensación por incapacidad o muerte de personas empleadas en bases militares, aéreas y navales fuera de los Estados Unidos. Se esta-

tuyó en su Sec. 1(a) que las disposiciones de la Ley "Longshoremen's and Harbor Workers' Compensation Act" serían aplicables a lesiones o muerte de cualquier empleado dedicado a cualquier trabajo:—

(1) en una base militar, aérea o naval adquirida después de enero 1, 1940, por los Estados Unidos de cualquier gobierno extranjero; o

(2) en cualquier terreno ocupado o usado por los Estados Unidos para fines militares o navales en cualquier Territorio o posesión fuera de los Estados Unidos continentales (incluyendo la Base de Guantánamo, Cuba, y la Zona del Canal); o

(3) en cualquier obra pública en cualquier Territorio o posesión fuera de los Estados Unidos continentales (incluyendo la Base de Guantánamo, Cuba, y la Zona del Canal), si dicho empleado trabaja en tal sitio en un empleo bajo el contrato, o subcontrato del mismo de un contratista con los Estados Unidos. . . .

(4) empleado bajo un contrato con los Estados Unidos o cualquier departamento ejecutivo o agencia del mismo cuando tal contrato ha de realizarse fuera de los Estados Unidos continentales y en sitios que no sean las áreas descritas en los apartados (1), (2) y (3) anteriores, con el fin de dedicarse a una obra pública, y tal contrato deberá contener disposiciones exigiendo que el contratista o subcontratista provea para beneficio de los empleados de dicha obra pública el pago de compensación y otros beneficios bajo la Ley y mantenga en vigor durante todo el término del contrato y mientras los empleados estén dedicados al trabajo bajo el mismo un seguro para el pago de tal compensación y beneficios;

(5) empleado bajo un contrato aprobado o costeado por los Estados Unidos o un departamento ejecutivo, o agencia o subcontrato, cuando dicho contrato se ha de efectuar fuera de los Estados Unidos continentales bajo la Ley de Seguridad

Mutua de 1954, con ciertas excepciones; y tal contrato deberá contener disposiciones exigiendo al contratista que provea en beneficio de los empleados bajo el mismo el pago de compensación y otros beneficios bajo la Ley y mantenga durante el término del contrato un seguro para el pago de dicha compensación; .

(6) empleado fuera de los Estados Unidos continentales por un patrono americano que provea servicios de bienestar o servicios similares para beneficio de las Fuerzas Armadas . . . .Las anteriores disposiciones rigen con independencia del sitio donde ocurra la lesión o muerte y comprenden la lesión o muerte de cualquier empleado durante la transportación al o del sitio de trabajo cuando el patrono o los Estados Unidos provean dicha transportación o el costo de la misma.

El estatuto define "obra pública" como cualquier mejora permanente o cualquier proyecto, sea o no permanente, que envuelva la construcción, alteración, remoción o reparación para uso público de los Estados Unidos o sus aliados e incluye, aunque no limitado a proyectos u operaciones bajo contratos de servicios y proyectos relacionados con la defensa nacional o con actividades de guerra, dragado, mejoramiento de puertos, diques, carreteras y viviendas y trabajo preparatorio o incidental en relación con los mismos en el sitio del proyecto. El término "actividades de guerra" incluye actividades directamente relacionadas con operaciones militares, y el término "Estados Unidos continentales" significa los Estados y el Distrito de Columbia.

Dispone esta Ley en su Sec. 1(c) que la responsabilidad de un patrono, contratista o subcontratista bajo la misma será exclusiva y en lugar de toda otra responsabilidad de tal patrono o contratista para con sus empleados (y sus dependientes) cubiertos por esta Ley, que surja bajo las leyes de compensaciones a obreros de cualquier Estado, Territorio u otra jurisdicción, con independencia del sitio donde el contrato de trabajo de tal empleado se haya hecho o convenido.

En la Sec. 1(d) al definirse el término "contratista" a los efectos de esta Ley se dispone que los derechos, obligaciones, responsabilidad y deberes de un patrono bajo el estatuto "Longshoremen's and Habor Workers' Compensation Act" se aplicarán a tal "contratista".

Sostiene la peticionaria Autoridad de las Fuentes Fluviales en apoyo de su contención que el accidente estaba cubierto por nuestra Ley de Compensaciones por Accidentes del Trabajo; que el Patrono Gahagan Western Hemisphere Dredging Corp., era aquí un patrono no asegurado; que el accidente no ocurrió en aguas navegables y sí en tierra, ni en una base de las fuerzas armadas; que Commercial Insurance Co., pagó la compensación determinada por el Departamento del Trabajo de los Estados Unidos erróneamente o sin que viniera obligada a ello, y que por tal motivo no tiene derecho alguno de subrogación. [1]

La Sec. 3 de la Ley del Congreso de 4 de marzo de 1927, 44 Stat. 1426, "Longshoremen's and Harbor Workers' Compensation Act", 33 U.S.C.A. § 903, dispone que se pagará compensación bajo la misma por incapacidad o muerte de un empleado, pero sólo si la incapacidad o muerte resulta de lesiones ocurridas en aguas navegables de los Estados Unidos y si el resarcimiento por tal incapacidad o muerte a través de procedimientos para compensaciones a obreros no puede ser válidamente provisto por ley del Estado.

En lo que a Puerto Rico concierne, existen ciertas normas doctrinales que sitúan en su propio lugar nuestro estatuto de compensaciones a obreros. *Lastra* v. *New York & Porto*

---

[1] A quien fundamentalmente afectaría la subrogación es a la parte demandante, el obrero. Lo que queda del pleito es una acción contra el tercero a quien se imputa causante del daño. El patrono y su asegurador fueron excluidos bajo la teoría del remedio exclusivo, en la sentencia de 14 de diciembre de 1965 antes transcrita, la cual es final y firme. Sólo en caso de que se hallare culpable a la Autoridad, y el daño fuera menor de $42,757.18 podría la Autoridad ser afectada en la diferencia hasta esa suma, por la subrogación.

*Rico S.S. Co.*, 2 F.2d 812 (1st Cir. 1924); (²) *Fonseca* v. *Prann*, 282 F.2d 153 (1st Cir. 1960), *cert. den.*, 365 U.S. 860; *Guerrido* v. *Alcoa Steamship Co.*, 234 F.2d 349 (1st Cir. 1956); *Waterman Steamship Corporation* v. *Rodriguez*, 290 F.2d 175 (1st. Cir. 1961). Véase la amplia exposición y estudio en *Inter Island Ship. Corp.* v. *Comisión Industrial*, 89 D.P.R. 648 (1963).

En *Lastra* se sostuvo que nuestro estatuto de compensaciones a obreros se aplicaba a la New York & Porto Rico S.S. Co., ya que en cuanto a la ley sustantiva de almirantazgo Puerto Rico no estaba sujeto a las mismas limitaciones que los Estados. La decisión en *Southern Pacific* v. *Jensen*, 244 U.S. 205, no fue aquí aplicada por la Corte de Apelaciones, que revocó a la de Distrito.

En el caso de *Fonseca* se sostuvo el fallo de la Corte de Distrito, 178 F.Supp. 845, que desestimó demandas de daños de marinos y miembros de tripulación que se lesionaron trabajando a bordo de barcos en aguas navegables dentro de los límites territoriales de Puerto Rico. Los obreros estaban asegurados bajo nuestra ley de accidentes del trabajo y recibieron compensación. Demandaron a los patronos bajo la Ley Jones, de negligencia, y bajo la ley general de almirantazgo por falta de buen estado de la embarcación. (*) Se sostuvo la aplicación de nuestro estatuto como remedio exclusivo contra el patrono.

En el caso de *Guerrido* se reafirmó la aplicación de nuestro estatuto al sostenerse que los obreros lesionados, empleados de una compañía estibadora, podían demandar al dueño del barco como tercero responsable del daño, remedio que concede la ley nuestra.

En *Waterman* se sostuvo que la ley marítima de los Estados Unidos rige en aguas navegables de los Estados

---

(²) Desestimado por falta de jurisdicción, 269 U.S. 536.

(*) *unseaworthiness.*

Unidos en y alrededor de Puerto Rico en la extensión en que no sea localmente inaplicable, y que la ley de compensaciones a obreros nuestra no puede suplantar una norma general de la ley marítima que el Congreso hizo aplicable a las aguas de Puerto Rico igual que a las demás aguas de Estados Unidos. Se sostuvo así que la ley general sobre falta de buenas condiciones navegables rige aquí.

Los casos citados no ayudan a la Peticionaria. Estamos ahora ante una situación específica gobernada también por legislación específica del Congreso, cuyo radio de aplicación surge claramente del texto de la ley. La Ley de 16 de agosto de 1941 para proveer compensación por incapacidad o muerte a personas empleadas en bases militares, aéreas y navales fuera de los Estados Unidos, 55 Stat. 622, 42 U.S.C.A. §§ 1651 a 1654, fue una legislación de guerra con el fin de proteger a los obreros que trabajaran bajo contratos de los Estados Unidos en cualquier sitio, incluyendo países extranjeros, que no fueran los Estados y el Distrito de Columbia. Así se definió el término "fuera de los Estados Unidos continentales". La ley hizo aplicables por referencia las disposiciones del "Longshoremen's and Harbor Workers' Compensation Act" *excepto* en lo que de otro modo se dispusiera.

En *Royal Indemnity Co.* v. *Puerto Rico Cement Corp.*, 142 F.2d 237 (1st Cir. 1943), *cert. den.* 323 U.S. 756, un pleito de subrogación de *Royal* para recobrar de Ponce Cement lo pagado por aquélla a un empleado que se lesionó debido a la negligencia de ésta bajo la Ley de 1941 aquí envuelta la Corte de Apelaciones sostuvo que la disposición en "Longshoremen's . . . Act"—Sec. 3, 33 U.S.C.A. § 903—que permite su aplicación sólo si el Estado no ha provisto válidamente compensación por accidentes de trabajo, no era aplicable en ese caso en que la lesión ocurrió en una base militar. Se dijo que la protección dada a los obreros por la Ley de 1941, 42 U.S.C.A. § 1651, lo fue por el Congreso sin tomar en

cuenta las leyes locales de compensaciones a obreros. Este caso resuelve la contención de la Peticionaria. No deja de ser aplicable porque se tratara de una lesión ocurrida en una base militar. La Ley de 1941 no se limita sólo a bases. Cubre cualquier obrero en cualquier sitio trabajando bajo un contrato de Estados Unidos, excepto en los Estados y el Distrito de Columbia. Sec. 1(a)(3), (4), (5), (6) antes transcritas. Véanse: *Republic Aviation Corporation* v. *Lowe*, 164 F.2d 18, *cert. den.* 333 U.S. 845; *Lieb* v. *Interior Enterprises, Inc.*, 395 P.2d 32; *Flying Tiger Lines, etc.* v. *Landy*, 250 F.Supp. 282; *O'Keeffe* v. *Pan American World Airways, Inc.*, 338 F.2d 319 (5th Cir. 1964), *cert. den.* 380 U.S. 951.

La Sec. 1(d) de la Ley de 1941, 42 U.S.C.A. § 1651, dispone que el patrono tendrá todos los derechos, obligaciones, responsabilidad y deberes de un patrono bajo el "Longshoremen's . . . Act". La Sec. 5 de este estatuto, 33 U.S.C.A. § 905, establece contra el patrono un remedio exclusivo si ha asegurado la compensación. Si el daño ha ocurrido como consecuencia de una tercera persona, y el obrero acepta la compensación fijada por el Comisionado federal, se produce una cesión de los derechos del obrero a favor del patrono. Igualmente produce una cesión de los derechos del obrero a favor del patrono para resarcirse del tercero, el pago por el patrono de la compensación fijada a determinado fondo. El patrono puede instituir pleito contra el tercero responsable. Si el patrono se ha asegurado y el asegurador paga la compensación, éste se subroga en los derechos del patrono, según todo ello se dispone en la Sec. 33 de la Ley de 1927, 33 U.S.C.A. § 933.

No procede sostener como cuestión escueta de derecho, que Commercial Insurance Co. no tiene derecho a intervenir bajo la teoría de que la legislación referida no se aplica. Por otra parte, todo lo que informa el récord es una labor de dragado de la bahía de San Juan bajo contrato con los Es-

tados Unidos. La Autoridad, al contestar la demanda, puede levantar cualquier defensa que tienda a establecer, como cuestión *de hecho*, que no se trata de una obra cubierta por la ley, y presentar prueba sobre ello. No incurrió en error, por lo tanto, la Sala de instancia al negarse a eliminar la demanda de intervención, como cuestión de derecho, y ordenar que se contestara en los méritos. (3)

*El auto de certiorari que expedimos será anulado.*

_____

(3) Cf. *Alcoa Steamship Co.* v. *Perez Rodriguez,* 376 F.2d 35 (1st Cir. 1967).