Ronald BARBER, Appellant,

v.

NEW ENGLAND FISH COMPANY,
Appellee.

No. 1636.

Supreme Court of Alaska.

May 25, 1973.

H. John DeNault III, Rice, Hoppner, Blair & Hedland, Anchorage, Alaska, for appellant.

Bruce E. Gagnon, Atkinson, Conway, Young, Bell & Gagnon, Anchorage, Alaska, for appellee.

## OPINION

ERWIN, Justice.

Appellant, Ronald Barber, an employee of the New England Fish Company, appellee, was injured while performing duties of his employment on or about July 22, 1969. Barber was employed as a longshoreman-stevedore and was injured while aboard appellee's barge in the navigable waters of the United States. The barge was located at the dock of the Peterson Paint Company. Barber has received workmen's compensation benefits pursuant to Alaska Workmen's Compensation Act, equal to or in excess of $1,606.84.

Barber sued New England Fish Company, setting forth a claim of unseaworthiness and a claim for negligence. New England Fish moved for a summary judgment stating that the "exclusive remedy" provision of Alaska's Workmen's Compensation Act precluded further recovery against the employer. A summary judgment was entered on November 17, 1971 by the superior court dismissing Barber's complaint. From the granting of summary judgment this appeal was taken.

The sole issue for this court to decide is whether Barber's collection of workmen's compensation benefits precludes further recovery against his employer on a subsequent unseaworthiness claim.[1]

New England Fish Company contends that since Barber took advantage of Alaska's workmen's compensation benefits he is bound by the "exclusive remedy" provision of AS 23.30.055.[2] There is little question that if Barber were bringing a claim based on state law appellee's position would be correct.[3] However, it should be noted at the outset that a claim of unseaworthiness involves a federal maritime right.[4] It resembles a liability without

1. Appellant Barber conceded that the trial court properly dismissed his claim for relief based on negligence at oral argument. Both parties concede that Barber was covered initially by Alaska Workmen's Compensation law. This issue does not have to be decided here but this decision should not be interpreted as holding a longshoreman injured on navigable waters is constitutionally permitted to receive benefits under Alaska's Workmen's Compensation law. This is a very complex area of the law and any decision on this point should be made only after full adversary presentations. *See generally* Larson, The Conflict of Laws Problem Between the Longshoremen's Act and State Workmen's Compensation Acts, 45 S.Cal.L.Rev. 699 (1972); 3 Larson, Workmen's Compensation Law § 89.22 (1971); Note, Admiralty—Dockside Injuries under the Longshoremen's and Harbor Worker's Compensation Act, 3 Ga.L.Rev. 622 (1969); Smith, George P., On the Waterfront at the Pier's Edge: The Longshoremen's and Harbor Worker's Compensation Act, 56 Cornell L.Rev. 114 (1970); Note, Jurisdictional Problems of Maritime Tort Actions: Application of State and Federal Remedies, 6 San Diego L.Rev. 470 (1969); Comment, The Tangled Seine: A Survey of Maritime Personal Injury Remedies, 57 Yale L.J. 243 (1947).

2. AS 23.30.055 provides in pertinent part: *Exclusiveness of liability.* The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death. However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or his legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in admiralty for damages on account of the injury or death . . . .

3. *See* Arvidson v. Dillingham Corp., 462 F.2d 1 (9th Cir. 1972).

4. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 89, 66 S.Ct. 872, 874, 90 L.Ed. 1099,

fault action and is more favorable to the injured plaintiff than an ordinary negligence claim.[5]

■ Since an unseaworthiness claim is a federal maritime tort, the existing body of federal substantive law is controlling.[6] We have previously held that Alaskan courts must apply the same substantive law as a federal court would when dealing with a federal maritime tort.[7]

Section 9 of the Judiciary Act of 1789 permits Barber to bring this action in a state court. This section implemented the constitutional extension of judicial power to "all cases of admiralty and maritime jurisdiction"[8] by providing that:

> [T]he district courts . . . shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases the right of a common law remedy, where the common law is competent to give it . . . .[9]

We commented upon the effect of the "saving to suitor clause" in Shannon v. City of Anchorage[10] where we stated:

> This statute reserves to the federal courts in admiralty exclusive jurisdiction over *in rem* admiralty actions, that is, claims in the nature of maritime liens to be enforced usually against vessels. Generally, the "saving to suitors" clause means that a suitor asserting an *in personam*

admiralty claim may elect to sue in a "common law" state court through an ordinary civil action. In such actions, the state courts must apply the same substantive law as would be applied had the suit been instituted in admiralty in a federal court. (Footnotes omitted, emphasis added.)

Here again we turn to federal substantive law as controlling for the issue presented.

There is no recent United States Supreme Court decision on the precise issue presented. Appellee New England Fish cites the 1922 case of Grant Smith-Porter Ship Co. v. Rohde[11] as controlling precedent. It claims *Grant* allows this court to hold that the "exclusive remedy" provision found in our workmen's compensation act may legitimately exclude plaintiff from pursuing his federal maritime claim of unseaworthiness. In *Grant*, the court concluded that admiralty jurisdiction reaches a vessel in the process of construction on navigable waters with respect to an action arising in tort. However, the court found that a carpenter injured while working on the construction of a vessel was not entitled to pursue his maritime remedy for the tort because he had elected to be covered under the Oregon Workmen's Compensation provision.[12] The Supreme Court stated:

> [A]s to certain *local matters, regulation of which would work no material preju-*

---

1103 (1946); The Osceola, 189 U.S. 158, 173–175, 23 S.Ct. 483, 486–487, 47 L.Ed. 760, 764 (1903).

5. Note, General Maritime Law Recognizes a Federal Remedy for Wrongful Death Caused by Unseaworthiness, 49 Tex.L. Rev. 128, 129 (1970).

6. "Consequently, the basis of [the plaintiff's] action is a maritime tort, a type of action which the Constitution has placed under national power to control in its substantive as well as its procedural features. . . ." (Footnotes omitted.) Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409–10, 74 S.Ct. 202, 204, 205, 98 L.Ed. 143, 151 (1953); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

7. Shannon v. City of Anchorage, 478 P. 2d 815, 818 (Alaska 1970); Maxwell v. Olsen, 468 P.2d 48, 51 (Alaska 1970).

8. U.S.Const. art. III, § 2.

9. 1 Stat. 76–77 (1789). This statute, presently codified as 28 U.S.C. § 1333 now reads in part as follows:
   The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
   (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

10. 478 P.2d 815, 818 (Alaska 1970).

11. 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922).

12. *Id.* at 477–478, 66 L.Ed. at 325.

*dice to the general maritime law*, the rules of the latter might be modified or supplemented by state statutes. The present case is controlled by that principle. The statute of the State applies and defines the rights and liabilities of the parties. The employee may assert his claim against the Industrial Accident Fund to which both he and the employer have contributed as provided by the statute, but he cannot recover damages in an admiralty court. (Emphasis added.) [13]

However, we agree with appellant Barber that the present case can be readily distinguished from *Grant*. In *Grant*, the Supreme Court of the United States found: (1) that the construction contract was non-maritime, and (2) that the plaintiff's employment had no direct relation to navigation or commerce.[14]

The importance of the nature of employment of the injured party was mentioned again in the more recent case of Calbeck v. Travelers Insurance Co.,[15] where the Supreme Court of the United States stated:

Just a month later the Court decided Grant-Smith-Porter Ship Co. v. Rohde, supra, where, as in the cases before us, a shipbuilder's employee was injured while at work on new construction afloat on navigable waters. He recovered a judgment under a libel in admiralty, although Oregon had a state workmen's compensation law which made the remedy thereunder exclusive of all other claims against the employer on account of the injury. This Court reversed that judgment, holding that the accident was among those *certain local matters*, regulation of which [by the States] would work no material prejudice to the general maritime law. (Footnote omitted, emphasis added.)

After *Grant*, the Supreme Court had another opportunity to decide whether a state workmen's compensation act could exclude federal maritime rights. In Millers' Indemnity Underwriters v. Braud [16] the court stated a federal maritime right could be displaced if the

matter is of mere *local* concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law. The act prescribed the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist.

The plaintiff in *Millers'* was engaged in removing the timbers on an abandoned set of ways in navigable waters.

The Supreme Court in both *Grant* and *Millers'* stressed the local nature of the injured party's employment and noted that the state restrictions "would work no material prejudice to the general maritime law." The Supreme Court has never held that similar restrictions on a longshoreman injured upon navigable water would be permissible. Even though *Grant* and *Millers'* are distinguishable, they both stand for the proposition that a state can limit a federal maritime right in some instances without violating the supremacy clause of the United States Constitution.

Appellee also cites Alcoa Steamship Co. v. Rodriquez [17] as authority for the proposition that a state can constitutionally restrict the maritime rights of a longshoreman, injured on navigable waters, who takes advantage of a state compensation act purporting to provide the "exclusive remedy". In *Alcoa*, a longshoreman employed by a shipowner was injured on a vessel owned by his employer. The vessel was in the navigable waters of Puerto Rico. The longshoreman was paid compensation benefits under the Puerto Rico Workmen's

13. *Id.* at 477, 42 S.Ct. at 158, 66 L.Ed. at 324–325.

14. *Id.* at 475–476, 66 L.Ed. at 324.

15. 370 U.S. 114, 119, 82 S.Ct. 1196, 1199, 8 L.Ed.2d 368, 372 (1962).

16. 270 U.S. 59, 64–65, 46 S.Ct. 194, 195, 70 L.Ed. 470, 472 (1926).

17. 376 F.2d 35 (1st Cir.), cert. denied 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967).

Compensation Act. The Puerto Rico Workmen's Compensation Act has an "exclusive remedy" provision similar to our AS 23.30.-055 which provided:

When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist.[18]

In *Alcoa*, subsequent to the award of compensation benefits, the plaintiff had brought an unseaworthiness claim against the owner of the vessel. The longshoreman claimed that the Puerto Rican statute could not cut off his federal maritime right. The court disagreed; while dismissing plaintiff's claim the court stated:

We adhere to the views expressed in our prior opinion to the effect that the Puerto Rico Workmen's Accident Compensation Act has, within the area of its applicability, displaced the remedies of the maritime law, including the federal Longshoremen's Act and provides the sole remedy of a Puerto Rico longshoreman against his employer for injuries sustained in the course of his employment. (Footnotes omitted.) [19]

We do not find *Alcoa* persuasive in the ultimate resolution of the present case. Puerto Rico occupies a unique position in the application of maritime laws as explained by the First Circuit Court of Appeals in Lastra v. New York and Porto Rico Steamship Co.[20] and Guerrido v. Alcoa Steamship Co.[21] The court concluded that Congress had specifically granted the Puerto Rico legislature the power and authority to control Puerto Rican waters.[22] Section 8 of the Jones Act of 1917 [23] gave the Puerto Rico legislature the authority to supercede federal maritime law with its own legislation, except for laws which the United States Congress has expressly made applicable to Puerto Rico.[24] The court in *Alcoa* relied on the unique status of Puerto Rico in concluding that the commonwealth compensation act could preclude the plaintiff's federal maritime right.[25] We have been cited to no authority nor has our own research revealed any reason to believe that Alaska occupies a unique position parallel to that occupied by Puerto Rico, granting our legislature the same power to displace common law maritime concepts.

There have been many cases which caution against states making substantial inroads into federal maritime rights. In Moragne v. States Marine Lines,[26] the Supreme Court held that a plaintiff could maintain an action for wrongful death in an admiralty action despite a state law not permitting a wrongful death action based on a claim of unseaworthiness. In Kossick v. United Fruit Co.,[27] the Supreme Court held that a chief steward's action for maintenance and cure was incorrectly dismissed by applying the New York Statute of Frauds regarding verbal agreements. The court held the New York law inapplicable partly because the application of state law would disturb the uniformity of maritime law. Kermarec v. Companie Generale Trans-

18. 11 L.P.R.A. § 21.

19. 376 F.2d at 38.

20. 2 F.2d 812 (1st Cir. 1924).

21. 234 F.2d 349 (1st Cir. 1956).

22. *Id.* at 353–354.

23. 48 U.S.C. § 749.

24. 234 F.2d at 355.

25. It should also be noted that the Federal Longshoremen's Act does not apply to Puerto Rico. Hence, the only compensation act available to the injured longshoreman in Alcoa Steamship Co. v. Rodriguez was the commonwealth compensation act. Rosario v. Waterman S.S. Corp., 158 F.Supp. 537 (S.D.N.Y. 1957).

26. 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

27. 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

atlantique[28] held inapplicable to an admiralty negligence action a state common law distinction between the shipowner's duty of care to a licensee and the duty of care to an invitee. Admiralty makes no such distinction. In McAllister v. Magnolia Petroleum Co.,[29] the court held that a state cannot apply its statute of limitation when an action for unseaworthiness is combined with an action for negligence under the Jones Act. In Burrage v. Flota Mercante Grancolombiana, S.A.,[30] the Fifth Circuit Court of Appeals recently stated that:

> If—and there cannot be a real if at all—the WWLP [indemnity] motion is an integral part of this *court-created* maritime law, then a state principle, statutory or Judge-made, which is a bar to effectual enforcement of the maritime right *cannot constitutionally be applied since it works material prejudice to the characteristic features of general maritime law and interferes with the proper uniformity of that law contrary to Article 3, § 2 to the Constitution.* (Emphasis added.)

Not all state intrusion upon federal maritime rights is constitutionally impermissible. As noted previously, *Grant* and *Millers'* have never expressly been overruled. The Supreme Court has acknowledged a process of accommodation of federal and local interests in areas of overlapping state and federal concern. In Kossick v. United Fruit Company,[31] the Supreme Court stated:

> Although the doctrines of the uniformity and supremacy of the maritime law have been vigorously criticized the qualifications and exceptions which this Court has built up to that imperative doctrine have not been considered notably more adequate. Perhaps the most often heard criticism of the supremacy doctrine is this:

the fact that maritime law is—in a special sense at least—federal law and therefore supreme by virtue of Article 6 of the Constitution, carries with it the implication that wherever a maritime interest is involved, no matter how slight or marginal, it must displace a local interest, no matter how pressing and significant. But the process is surely rather one of accommodation, entirely familiar in many areas of overlapping state and federal concern, or a process somewhat analogous to the normal conflict of laws situation where two sovereignties assert divergent interests in a transaction as to which both have some concern. Surely the claim of federal supremacy is adequately served by the availability of a federal forum in the first instance and of review in this Court to provide assurance that the federal interest is correctly assessed and accorded due weight.

> Thus, for instance, it blinks at reality to assert that because a longshoreman, living ashore by shoreside employers, performs seaman's work, the State with these contacts must lose all concern for the longshoreman's status and well being. · · · (Footnotes omitted.)

■ The cutting point thus becomes whether prohibiting the plaintiff from pursuing his unseaworthiness claim because he took advantage of Alaska's Workmen's Compensation Act would materially prejudice the characteristic features of federal law and interfere with the uniformity of that law; or whether the federal system could accommodate such prohibition. We feel that if appellant is denied the right to pursue his maritime remedy a general prejudice to the features of maritime law would result.

First, it should be noted that the work of a longshoreman has been held to bear a direct relation to the facilitation of com-

28. 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

29. 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).

30. 431 F.2d 1229, 1234 (5th Cir. 1970).

31. 365 U.S. 731, 738–739, 81 S.Ct. 886, 891–892, 6 L.Ed.2d 56, 62–63 (1961).

merce.[32] It should also be observed that appellant, a longshoreman injured on navigable waters, might have qualified for benefits under the Federal Longshoremen's and Harbor Workers' Compensation Act.[33] A longshoreman injured on navigable waters clearly has the right to bring an unseaworthiness action.[34] It is now clear that if appellant had elected to accept benefits under the Longshoremen's Act, its "exclusive remedy" provision would not prohibit him from subsequently bringing an unseaworthiness action against the employer-shipowner.[35] The "exclusive remedy" provision of the Longshoremen's Act is very similar to the one found in Alaska's Workmen's Compensation Act. The federal provisions read as follows:

> The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case of death results from the injury, may elect to claim compensation with this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.[36]

Thus a situation is presented whereby appellant has elected to avail himself of the state compensation benefits and argues he should have the same right of suing his employer-shipowner as if he elected to proceed under the federal act. We agree and feel any other result would work material prejudice to general maritime law contrary to the dictates of the constitution's supremacy clause as interpreted by the United States Supreme Court.

Professor Larson in a recent law review article regarding the interplay of federal and state laws gives additional support to this position:

> But we cannot escape history, and we do not begin with a clean slate. In particular, we could begin now with a somewhat different set of values and objectives. Of these, the most cogent would be the recognition of the right of a state having a legitimate interest in an injury to apply its compensation remedies to that injury—even at the expense of accepting duplicate or multiple jurisdiction and consequent successive and supplementary awards. What disadvantage must be weighed against the advantage of allowing states this privilege, even vis-a-vis the federal Longshoremen's Act? So far as the employer is concerned, the worse that can happen to him is no more noxious than the worst that can happen under the McCartin rule: He ends by giving the employee the benefit of the act that happens to be more favor-

32. Employers' Liab. Assurance Corp. v. Cook, 281 U.S. 233, 236, 50 S.Ct. 308, 309, 74 L.Ed. 823, 825 (1930).

33. 33 U.S.C. § 901 et seq. This court has insufficient information to determine whether the barge Barber was injured on complied with the minimum weight requirement of 33 U.S.C. § 903(a)(1), thus providing him with the coverage of the Longshoremen's and Harbor Workers' Compensation Act.

34. E. g. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 879, 90 L. Ed. 1099, 1108–1109 (1946).

35. Jackson v. Lykes Bros. SS. Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967); Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Biggs v. Norfolk Dredging Co., 360 F.2d 360, 363 (4th Cir. 1966). A different situation may be presented in those cases where the claimant has executed a release to all claims. See Comeaux v. Two-R Drilling Co., 236 F.Supp. 735 (E.D.La.1964); Flener v. Waterways Oil Co., 261 F.Supp. 740 (W.D.Tenn. 1966); Dacus v. Spin-Nes Realty & Const. Co., 22 N.Y.2d 427, 293 N.Y.S. 2d 83, 239 N.E.2d 718 (N.Y.1968).

36. 33 U.S.C. § 905.

able to him. The assumption of the necessary insurance coverage is neither inconvenient nor unduly onerous. (Footnote omitted.) [37]

Finally, New England Fish Company contends that even if Alaska does not have the power to legislate generally with respect to maritime remedies regarding injuries received within its territorial waters, it would be contrary to the Submerged Land Acts to hold the state did not have the power to exclude a federal maritime remedy. The appellee cites 43 U.S.C. § 1311(a) as authority. That section provides in pertinent part:

It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States or the persons who were on June 5, 1950, entitled thereto under the law of the respective States in which the land is located, and the respective grantees, les-

sees, or successors in interest thereof.
. . .

However, appellee did not note a subsequent section of the same act which provides as follows:

Nothing in this chapter shall affect the use, development, improvement, or control by or under the constitutional authority of the United States of said lands and waters for the purposes of navigation or flood control or the production of power, *or be construed as the release or relinquishment of any rights of the United States arising under the constitutional authority of Congress to regulate or improve navigation,* or to provide for flood control, or the production of power. . . . (Emphasis added.) [38]

■ After an exhaustive search we could find no authority to support the position urged by appellee, nor were we directed to any. We hold that 43 U.S.C. § 1311 does not alter the dichotomy of state and federal power in this case.

■ The decision of the court below is reversed and remanded insofar as it failed to allow appellant to pursue his maritime claim of unseaworthiness.[39]

FITZGERALD and BOOCHEVER, JJ., not participating.

---

37. Larson, The Conflict of Laws Problem Between the Longshoremen's Act and State Workmen's Compensation Acts, 45 S.Cal.L.Rev. 699, 736–37 (1972).

38. 43 U.S.C. § 1311(d).

39. It is clear that appellant is not to be permitted double recovery. If the appellant succeeds in this effort and ultimately in his suit, the employer may recoup those amounts already paid by deducting them when satisfying the judgment. In the event the compensation was paid by one insurer and the judgment becomes payable by another, the employer as legal debtor in both instances may retain from the settlement of the judgment the sums necessary to reimburse the compensation carrier. The two remedies are thus complimentary. Biggs v. Norfolk Dredging Co., 360 F.2d 360, 364 (4th Cir. 1966).