## 114

**RIG TENDERS, INC., et al., Appellants,**

v.

**SANTA FE DRILLING COMPANY,**
**Appellee.**

**No. 2131.**

Supreme Court of Alaska.

June 6, 1975.

James M. Powell, Hughes, Thorsness, Lowe, Gantz & Powell, Anchorage, for appellants.

Sanford M. Gibbs, of Hagans, Smith & Brown, Anchorage, for appellee.

## OPINION

PER CURIAM.

Because the case law upon which this action rests has been obviated by legislative action by the United States Congress, this case is without precedential effect.[1]

On December 30, 1970, Jerry Brian, employed by Santa Fe Drilling Co., the appellee herein, was operating a crane aboard the Dolly Varden drilling platform located in navigable waters in Cook Inlet. He was engaged in unloading a heavy piece of equipment from the M/V *Rig Pusher,* a vessel owned and operated by appellant Rig Tenders, Inc., and bareboat chartered to Marathon Oil Company, owner of the platform. While Brian was attempting to lift the equipment from the vessel, a large pan of ice pushed the vessel away from the platform. The equipment apparently wedged fast on the vessel and this caused the crane to be pulled over the side of the platform. Brian, on the crane, fell approximately 100 feet to his death on the ice pan.

In a letter agreement signed January 7, 1971, but made retroactive to November 22, 1970, Santa Fe contracted with Marathon to provide labor and services to the platform. Santa Fe was to furnish workmen, including crane operators, and insure them against maritime injuries. Santa Fe em-

---

1. See discussion note 4 *infra.*

ployees regularly unloaded the supply vessels. An indemnity clause provided that Marathon would indemnify Santa Fe for losses due to injury or death of Santa Fe's employees.

Brian's estate recovered benefits under the Longshoremen's and Harbor Workers' Compensation Act, and then brought an action alleging negligence and unseaworthiness of Rig Tenders' vessel. Rig Tenders then filed this third-party action against Santa Fe, alleging breach of an implied warranty of workmanlike performance and seeking indemnity for its losses, if any, due to the claims against Rig Tenders pressed by Brian's estate. The superior court granted summary judgment to Santa Fe, holding the express indemnity clause of the letter agreement to bar the implied warranty.

■■■■■ The parties have stipulated, and we agree, that appellant's rights are governed by federal maritime law.[2] Under the doctrines of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.[3] and its progeny, a shipowner which has become liable to a longshoreman on a claim of unseaworthiness or negligence is entitled to indemnity from the stevedore who employs the longshoreman, where the stevedore has breached his implied warranty of workmanlike performance which is "the essence of [a] stevedoring contract."[4] Although it is not specifically provided in the contract, we think it clear that Santa Fe acted as a stevedore under the letter agreement with Marathon. The conduct of the parties confirms such an intent.[5] Therefore, under federal law Santa Fe had a duty to perform the unloading of the vessel in a workmanlike manner, and the implied warranty arose from the stevedoring arrangement.[6]

It is equally clear that with respect to this warranty Rig Tenders was a third party beneficiary of the stevedoring contract between Marathon and Santa Fe. As such, Rig Tenders is entitled to claim its protection in this action. As the United States Supreme Court has stated,

> [t]he warranty which a stevedore owes . . . is plainly for the benefit

2. Under Alaska law, the warranty underlying a third-party action of this type is not recognized. Golden Valley Electric Ass'n, Inc. v. City Electric Service, Inc., 518 P.2d 65, 67–69 (Alaska 1974). However, where a federal maritime right would be defeated or prejudiced by the application of state law, we have recognized that the federal maritime law will be controlling. Barber v. New England Fish Co., 510 P.2d 806, 808 (Alaska 1973); Shannon v. City of Anchorage, 478 P.2d 815, 818 (Alaska 1970).

3. 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

4. Id. at 133, 76 S.Ct. at 237, 100 L.Ed. at 142. The Ryan doctrine was extensively developed in the federal courts and became disfavored among commentators. See Proudfoot, "The Tar Baby": Maritime Personal-Injury Indemnity Actions, 20 Stan.L.Rev. 423 (1968); White, A New Look at The Shipowner's Right-Over for Shipboard Injuries, 12 Stan.L.Rev. 717 (1960). The doctrine has been nullified by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C.A. § 905(b) (Supp.1975), amending 33 U.S.C.A. § 905 (1970). The amendments do not bar the pres-

ent action because they are applicable only prospectively. Addison v. Bulk Food Carriers, Inc., 489 F.2d 1041, 1042 (1st Cir. 1974); Bell v. Isthmian Lines, Inc., 363 F.Supp. 156, 159 (M.D.Fla.1973); Corrao v. M/V Act III, 359 F.Supp. 1160, 1166 (S.D.Fla.1973).

5. This Court has long recognized that where uncertainty or ambiguity exists in the language in an agreement, the intent of the parties may be ascertained from their conduct thereunder. See generally Hendricks v. Knik Supply, Inc., 522 P.2d 543 (Alaska 1974); Smalley v. Juneau Clinic Building Corp., 493 P.2d 1296 (Alaska 1972).

6. We read federal precedent not to require that the stevedore be a professional stevedore. The warranty arises from the existence of some agreement under which stevedoring services are rendered. "[I]t is the act of unloading . . . that is crucial to a determination whether the person doing the act is a 'stevedore.'" Hartnett v. Reiss S. S. Co., 421 F.2d 1011, 1016 (2d Cir. 1970); see Brock v. Baroid Div. of Nat'l Lead Co., 339 F.Supp. 728 (W.D.La.1972), rev'd in part sub nom. Brock v. Coral Drilling, Inc., 477 F.2d 211 (5th Cir. 1973).

of the vessel whether the vessel's owners are parties to the contract or not.[7]

Appellee asserts that the express indemnity provision of the letter agreement should preclude liability based upon an implied obligation to indemnify. As a third party beneficiary, Rig Tenders would be subject to most of the defenses which Santa Fe could assert against Marathon.[8] However, Rig Tenders' rights under the implied warranty are not wholly derivative of Marathon's. Moreover, the mere existence of an indemnity provision is not sufficient to nullify the implied warranty owed under the *Ryan* doctrine. Absent an express disclaimer of the warranty of workmanlike performance, a stevedore owes the implied-in-fact duty to load or unload the vessel in a workmanlike manner.[9] The indemnity provision here clearly falls short of expressly disclaiming that duty.[10]

Whether Santa Fe rendered workmanlike performance as a stevedore presents a question of fact for the jury and the superior court erred in granting summary judgment to the appellee.

Reversed and remanded.

7. Crumady v. "Joachim Hendrik Fisser," 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413, 417 (1959).

8. *See* Larson v. Hugill, 15 Alaska 348, 354 (1954). *See generally* Restatement of Contracts § 140 (1932); 2 S. Williston, A Treatise on the Law of Contracts § 394 (W. Jaeger 3d ed. 1959).

9. Italia Societa Per Azioni Di Navigazione v. Oregon Stevedoring Co., 336 F.2d 124, 127 (9th Cir. 1964); Drago v. A/S Inger, 305 F.2d 139, 142 (2d Cir. 1962); Pettus v. Grace Line, Inc., 305 F.2d 151, 155 (2d Cir. 1962); States S.S. Co. v. Portland Stevedoring Co., 216 F.Supp. 934, 935 (D.Ore. 1963); Isthmian Lines, Inc. v. Canadian Stevedoring Co., 216 F.Supp. 856, 860 (D.Ore. 1963). *Contra,* D'Agosta v. Royal Netherlands S.S. Co., 301 F.2d 105, 107 (2d Cir. 1962).

10. The indemnity clause provided:

Except to the extent that the Insurance coverage referred to in Paragraph 4 is applicable, Santa Fe shall not be liable to Marathon for and Marathon shall indemnify and save Santa Fe harmless from and against any and all claims, demands, liabilities, loss, cost or expense or causes of action of any nature whatsoever for injury to or death of persons or for damage to or loss of property in any way relating to or involving Santa Fe's personnel while furnished to Marathon under this agreement; provided, however, that in no event shall Santa Fe be liable under the provisions of Item 4b above respecting third parties for an amount in excess of One Hundred Thousand Dollars ($100,000.00) for all claims arising out of any single incident; provided further, that Marathon shall require that third parties entering onto or servicing the project first obtain Workmen's Compensation, Employer's Liability, and Third Party Liability Insurance. Marathon shall provide Santa Fe with a waiver of subrogation in Santa Fe's favor on all insurance provided by Marathon for operation of these projects, or in the event Marathon shall elect to be self-insured for those operations, Marathon shall then indemnify and hold Santa Fe harmless in respect of such coverages.