RIG TENDERS, INC., Cook Inlet Marine, Puget Sound Tug & Barge Company and Travelers Indemnity Company, Appellants,

v.

SANTA FE DRILLING COMPANY, Appellee.

No. 3118.

Supreme Court of Alaska.

Sept. 22, 1978.

As Modified Dec. 11, 1978.

**506**

James M. Powell, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Timothy M. Stone, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This case is before us for the second time. The circumstances which gave rise to this action were described in our opinion in *Rig Tenders, Inc. v. Santa Fe Drilling Company*, 536 P.2d 114 (Alaska 1975). Only those facts necessary to an understanding of the instant appeal will be repeated here.

One of Santa Fe Drilling Company's employees had been killed while operating a crane aboard a drilling platform owned by Marathon Oil Company. Immediately prior to the accident which caused his death, the employee was attempting to lift heavy equipment from the *M/V Rig Pusher*, a vessel owned and operated by Rig Tenders, Inc., and chartered to Marathon.

The employee's estate recovered benefits under the Longshoremen's and Harbor Workers' Compensation Act, and then filed suit against Rig Tenders, Inc., Cook Inlet Marine, and Puget Sound Tug & Barge (the owners and operators of the vessel being unloaded at the time of the accident), Marathon Oil Company (the owner and operator of the drilling platform), Unit Crane and Shovel Corporation (the manufacturer of the crane), and J. Ray McDermott & Company (installer of the crane), alleging negligence and unseaworthiness. Rig Tenders, Cook Inlet Marine, and Puget Sound Tug & Barge in turn brought a third party action against Santa Fe, alleging breach of an implied warranty of workmanlike performance, and seeking indemnity in the event that the employee's estate recovered against Rig Tenders.[1]

The employee's estate settled the case during trial, receiving $150,000 from Cook Inlet Marine (affiliated with Rig Tenders), $75,000 from Marathon and $10,000 from McDermott.[2]

---

1. In our earlier opinion in this case, we applied the doctrine of *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). *Ryan* held that a shipowner who becomes liable to a longshoreman on a claim of negligence or unseaworthiness is entitled to indemnity from the stevedore employing the longshoreman, if the stevedore has breached the implied warranty of workmanlike performance which is "the essence of [a] stevedoring contract." *Id.* at 133, 76 S.Ct. at 237, 100 L.Ed. at 142. The *Ryan* doctrine had been nullified by 1972 federal legislation, but this did not affect our holding, as the new laws were applicable only prospectively. *See Rig Tenders, Inc., supra*, 536 P.2d at 115, n. 4. We held that under an agreement between Marathon Oil Company and Santa Fe, by the terms of which Santa Fe provided labor and services to Marathon's drilling platform, Santa Fe was acting as a stevedore. We found that under federal law, Santa Fe had a duty to perform the unloading of the vessel in question in a workmanlike manner, and that an implied warranty arose from the stevedore agreement. We further held that Rig Tenders was a third party beneficiary of the stevedoring contract between Santa Fe and Marathon. 536 P.2d at 115.

2. By terms of the settlement agreement, Marathon promised not to make any claims against Rig Tenders, Inc., Cook Inlet Marine or Puget Sound for indemnity or reimbursement of the $75,000 paid by Marathon to plaintiff, and Rig Tenders et al. agreed not to proceed against

The third party action proceeded. Following discovery, third party defendant Santa Fe moved to join Travelers Indemnity Company, Rig Tender's insurer, as a third party plaintiff. This motion was granted and Santa Fe filed an amended answer to the third party complaint.

Thereafter, Santa Fe moved for summary judgment, asserting that Travelers had expressly waived its rights of subrogation in favor of Santa Fe and, in the alternative, that Travelers' claim constituted an attempt to gain subrogation against its own assured.[3] Santa Fe based its argument on Paragraph 12 of Endorsement No. 1 of the Travelers policy, which reads as follows:

"It is understood and agreed that Underwriters hereby waive all rights of subrogation against Smith-Rice Co., and/or Smith-Rice Derrick Barges, Inc. and/or any of their affiliated and/or inter-related companies, also any other companies and/or U.S. Government departments with whom the assured has entered into contracts providing for release of liability."

Santa Fe's argument requires that Paragraph 12 of Endorsement 1 be read together with Endorsement 3 in which Marathon is named as an additional assured, and with the "Labor and Services Agreement" entered into between Santa Fe and Marathon. Paragraph 5 of the latter agreement reads as follows:

Marathon for indemnity of the $150,000 paid by them. It was further agreed that Rig Tenders, Cook Inlet and Puget Sound would continue to pursue their third party action for indemnity against Santa Fe Drilling. The parties to the settlement agreement recognized that if Rig Tenders et al. were successful in their claim against Santa Fe, that Santa Fe might proceed against Marathon, owing to certain provisions of the labor and services agreement entered into by Santa Fe and Marathon. The parties therefore agreed that if Santa Fe should be successful in such an indemnity action, Marathon would then be free to proceed against Rig Tenders, Cook Inlet Marine and Puget Sound or their insurers, for contribution, indemnity, or proration.

3. Pertinent portions of the Travelers' policy are reproduced in an appendix to this opinion.

4. Paragraph 4 referred to above reads as follows:

"Except to the extent that the insurance coverage referred to in Paragraph 4 is applicable,[4] Santa Fe shall not be liable to Marathon for and Marathon shall indemnify and save Santa Fe harmless from and against any and all claims, demands, liabilities, loss, cost or expense or causes of action of any nature whatsoever for injury to or death of persons or for damage to or involving Santa Fe's personnel while furnished to Marathon under this agreement; provided, however, that in no event shall Santa Fe be liable under the provisions of Item 4b above respecting third parties for an amount in excess of One Hundred Thousand Dollars ($100,000.00) for all claims arising out of any single incident; provided further, that Marathon shall require that third parties entering onto or servicing the project first obtain Workman's Compensation, Employer's Liability, and Third Party Liability Insurance. Marathon shall provide Santa Fe with a waiver of subrogation in Santa Fe's favor on all insurance provided by Marathon for operation of these projects, or in the event Marathon shall elect to be self-insured for these operations, Marathon shall then indemnify and hold Santa Fe harmless in respect of such coverages."

Thus Santa Fe maintained that Marathon was an assured under the Travelers' policy and that Marathon had entered into an

"During the continuation of this agreement, Santa Fe shall provide and maintain in effect, at no cost to Marathon other than the charges referred to hereinabove, the insurance listed below as to all personnel furnished by Santa Fe under this agreement with waiver of subrogation in Marathon's favor:
a. Workman's Compensation Insurance complying with Alaska Laws.
b. Voluntary Workman's Compensation Insurance.
c. Insurance covering employer's liability under the United States Longshoremen and Harbor Workers' Act.
d. Employer's liability insurance with a Five Hundred Thousand Dollar ($500,000.00) limit per occurrence covering any other liability of employers to employees, including liability under the Jones Act and the Death on the High Seas Act."

agreement with Santa Fe providing for release of liability so as to bring Santa Fe under the provisions of Paragraph 12, Endorsement 1, whereby Travelers waived rights of subrogation. Claiming to be a third party beneficiary under the Travelers policy, Santa Fe maintained that it was an entity contemplated by the parties to the Travelers contract and in whose favor Travelers had agreed to waive all rights of subrogation. Under this theory, Santa Fe argued that Travelers had breached its contract by bringing the subrogation action, and that Santa Fe was therefore entitled to damages for this alleged breach.

Finally, Santa Fe contended that owing to the indemnity and hold harmless agreement between Marathon and Santa Fe, Travelers was in effect seeking subrogation against its own assured, Marathon.

Third party plaintiffs filed a cross motion for summary judgment in response to Santa Fe's motion for summary judgment. They maintained that Santa Fe was not, and was never intended to be, protected under the Travelers policy. In their view, Santa Fe's contract with Marathon concerned the operation of Marathon's drilling platform, whereas the Travelers policy protected Marathon only with regard to the operation of the vessel *M/V Rig Pusher.* In addition, they interpreted paragraphs 4 and 5 of the agreement between Marathon and Santa Fe as raising a material question of fact as to whether Marathon had any duty to indemnify Santa Fe for claims arising out of this particular incident.

In support of their motion, third party plaintiffs attempted to explain the underlying intentions of the parties to the Travelers policy by citing the first paragraph of Endorsement No. 1, which reads as follows:

"1. It is agreed that the assured hereunder is as follows:

Rig Tenders, Inc., and/or Sea Tenders, Inc. and/or Cook Inlet Marine, Inc.

and/or Port Nikiski Dock & Terminal Co. and/or any of their subsidiary and/or affiliated and/or inter-related companies (as now or as may be hereafter constituted) and/or any of their vessels and/or any registered owner, (or their agents) of any vessel named in the schedule of vessels attached."

Third party plaintiffs claimed that the waiver of subrogation found in Paragraph 12, Endorsement 1 applied only to the assureds as defined in Paragraph 1 of that endorsement.

During oral argument on the summary judgment motion the trial judge commented that he saw "nothing in the policy that distinguishes Marathon as an additional insured from the assured itself, Rig Tenders. In other words, I feel that except as specifically otherwise provided that Marathon stands in the same shoes as Rig Tenders as an assured." He then entered summary judgment for Santa Fe, dismissing the third party action. This appeal followed.

I

■ We first take up the question of whether Travelers, by the express terms of its policy, waived its right of subrogation against Santa Fe as a company with whom one of its assureds, Marathon, had entered into a contract for release of liability. In other words, was Marathon to be regarded as an assured under the waiver of subrogation provision of Paragraph 12 of Endorsement No. 1, so as to cause Santa Fe, with whom Marathon had allegedly entered into an agreement for release of liability, to be subject to that waiver of subrogation provision?

■ We start from the premise that the named insured is an insured, unless the policy contains clearly stated conditions which, for some purpose, place the insured in some other category.[5] In Endorsement

---

5. *See, e. g., Tenopir v. State Farm Mutual Co.,* 403 F.2d 533 (9th Cir. 1968), which states that one who is a named insured is, by definition, always one of "the insured" because he is defined as such. This assumes, of course, that "the insured" is not peculiarly qualified by other provisions of the policy so that the named insured can be withdrawn from the category of "the insured."

No. 3 of the Travelers policy, it is agreed that:

"The following named companies and/or any of their subsidiary, affiliated, or associated companies are specially named as additional assureds as respects those vessels insured herein while such vessels are under charter, or in their custody, or engaged in services for them."

Marathon is then named, together with eight other companies. It appears to us that the terms "specific named additional assured" and "are specially named as additional assureds," which appear in Endorsement No. 3, do not create a category distinct from simply "the assured." The first page of the policy names "Rig Tenders, Inc., et al. (see additional provisions form attached)" as "the assured." This means that all the persons named in the attachments to the policy are "the assured." There are several reasons which lead to this conclusion.

First, nothing in the policy's standard, printed provisions either qualifies the term "the assured" any further or draws any distinction between one type of assured and another. Second, unless all of the persons named in the attachments are deemed to be incorporated by reference into the category of "the assured" on the first page of the policy, the policy becomes most difficult, if not impossible, to interpret. Third, we are not persuaded by Travelers' argument that because "the assured" are described in Endorsement No. 1, and "the named additional assureds" are described in Endorsement No. 3, we should somehow draw a distinction between those categories. The policy terms, as we have observed, do not create any such distinction, and we do not perceive what purpose would be served by it. Absent any limiting language, Travelers' liability is the same as to all "the assureds." It does not matter that some of them are named in Endorsement No. 1 and others in Endorsement No. 3.

Lastly, we cannot accept Travelers' argument that the express waiver of subrogation contained in paragraph 12 of Endorsement No. 1 applies only to the assureds named in paragraph 1 of that Endorsement. If that were so, then the limitation of liability of $250,000 per accident as to each vessel, contained in paragraph 2 of Endorsement No. 1, would not obtain. Similarly, paragraph 4 of Endorsement No. 1 states that the inclusion of more than one assured shall not increase the limit of liability on each vessel covered by the policy. We find it hard to believe that Travelers could have intended those portions of Endorsement No. 1 to be inapplicable as to the "named additional assureds" when it listed them in Endorsement No. 3. For, if this were true, it would mean that Travelers assumed unlimited liability as to the named additional assureds when it was unwilling to accept such liability for those who were merely "the assured." We must apply the principle that where it is possible all parts of the policy should be construed together harmoniously. *Stordahl v. Government Emp. Ins. Co.*, 564 P.2d 63, 66 n. 7 (Alaska 1977). Nothing in the policy supports the interpretation which Travelers would have us place upon it.

We must conclude that Marathon is an assured under the Travelers policy. It follows that Travelers cannot seek subrogation against Marathon as to any risks covered by the policy. We hold that the trial court ruled correctly on this question.

II

This conclusion does not, however, end our inquiry. An unresolved question of fact is raised by the language of the Marathon-Santa Fe agreement. That contract provides that Marathon will indemnify and save Santa Fe harmless from liability for claims arising out of injuries to or deaths of Santa Fe's employees "*[e]xcept to the extent that the insurance coverage referred to in Paragraph 4 is applicable. . . .*"[6] [emphasis supplied]

6. If there were other applicable insurance providing full coverage, then Marathon's duty to hold Santa Fe harmless would never arise, as the absence of such other insurance is a condition precedent to Marathon's duty to perform under this clause of the contract. *See* 3A Corbin on Contracts § 628, at 16 (1960).

As quoted above, paragraph 4 of the labor and services agreement lists the types of insurance which Santa Fe has agreed to furnish and maintain. It includes workers' compensation and employer's liability insurance. The question of whether Santa Fe actually carried such insurance, and whether such policies would cover the accident which prompted the original lawsuit in this matter, contain unresolved genuine issues of fact. Whether Travelers is attempting to obtain subrogation against a company, Santa Fe, with whom its assured, Marathon, had entered into an agreement for release of liability is a question which cannot be answered until it is determined whether Marathon has a contractual duty to hold Santa Fe harmless. This, in turn, is dependent upon the type of insurance which Santa Fe has secured.

Owing to these unresolved factual issues, neither party is entitled to summary judgment.[7] We reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

## APPENDIX

### The Travelers
#### Indemnity Company

**W. B. BRANDT & CO., INC. — OCEAN MARINE UNDERWRITERS — ESTABLISHED 1905**

HEAD OFFICE • 77 BATTERY STREET, SAN FRANCISCO, CALIFORNIA 94119

### BY THIS POLICY OF INSURANCE

**PROTECTION AND INDEMNITY**                                          SP 23 (Revised)

Amount Insured $ 250,000.00 (EACH VESSEL SEPARATELY)        No. P.I.
Premium $ (AS SPECIALLY AGREED)
Rate . (AS SPECIALLY AGREED)

RIG TENDERS, INC., ETAL (SEE ADDITIONAL PROVISIONS FORM ATTACHED)

......................................................................................... hereinafter called the Assured;

**Loss, if any, payable to** THE REGISTERED OWNER OF THE RESPECTIVE VESSEL OF VESSELS INVOLVED AS PER SCHEDULE OF VESSELS ATTACHED ........................................ or order

**In the sum of** TWO HUNDRED FIFTY THOUSAND DALLORS (EACH VESSEL SEPARATELY) ..... Dollars

at and from the 1ST .......... day of ...... MAY ....................., 19 70 at NOON, PACIFIC STANDARD ........... time

until the ....... 1ST ........ day of ...... MAY ..............., 19 71 at NOON, PACIFIC STANDARD ....... time

against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, ALL VESSELS OWNED OR OPERATED BY THE ASSURED AS PER SCHEDULE ATTACHED in respect of the vessel called the/....... . .. ................. .. . ..(XXXXXX................... . . ) or by whatsoever other names the said vessel is or shall be named or called.

In consideration of the Stipulations Herein Named and of .. ..(AS SPECIALLY AGREED)......... .................................................................. Dollars, being Premium at the rate of .... AS AGREED ........ ... ... ...

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

Loss of Life, injury and illness

(1) Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon. liability under any Compensation Act to any employee of the Assured, (other than XXXXXXX or in case of death to his beneficiaries or others.

A MASTER, CREW MEMBER, OR VESSEL EMPLOYEE

Protection hereunder for loss of life or personal injury arising in connection with the handling of cargo of the vessel named herein shall commence from the time of receipt by the Assured of the cargo on dock or wharf or on craft alongside the said vessel for loading thereon and shall continue until delivery thereof from dock or wharf of discharge or until discharge from the said vessel on to another vessel or craft.

Hospital, medical, or other expenses

(2) Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding XXXXXXXXXXXXXXXXXXXXX when necessarily and reasonably incurred by the Assured for the burial of any seaman of said vessel.

---

7. In view of our disposition of the other issues presented in this appeal, we need not decide whether Santa Fe was a third party beneficiary under the Travelers policy.

Repatriation expenses    (3) Liability for repatriation expenses of any member of the crew of the vessel named herein, necessarily and reasonably incurred, under statutory obligation, excepting such expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the said vessel, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligation, during unemployment due to the wreck or loss of the said vessel.

Damage to other vessel or property on board caused by collision    (4) Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the vessel named herein, insofar as such liability would not be covered by full insurance under the AMERICAN INSTITUTE TIME (HULLS) CURRENT FORM POLICY. ....... .. ... ........ .... .. ...... . ..(including the four-fourths running-down clause).

Principle of cross-liabilities to prevail

(a) Claims under this clause shall be settled on the principle of cross-liabilities to the same extent only as provided in the running-down clause above mentioned.

(b) Claims under this clause shall be divided among the several classes of claims enumerated in this policy and each class shall be subject to the deduction and special conditions applicable in respect of such class.

(c) Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause.

Damage to other vessel or property on board not caused by collision    (5) Liability for loss of or damage to any other vessel or craft, or to property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured.

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

Damage to docks, piers, etc.    (6) Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft.

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

## ENDORSEMENT NO. 1

### ADDITIONAL PROVISIONS

1. IT IS AGREED THAT THE ASSURED HEREUNDER IS AS FOLLOWS:

   RIG TENDERS, INC. AND/OR SEA TENDERS, INC. AND/OR COOK INLET MARINE, INC. AND/OR PORT NIKISKI DOCK & TERMINAL CO. AND/OR ANY OF THEIR SUBSIDIARY AND/OR AFFILIATED AND/OR INTER-RELATED COMPANIES (AS NOW OR AS MAY BE HEREAFTER CONSTITUTED) AND/OR ANY OF THEIR VESSELS AND/OR ANY REGISTERED OWNER, (OR THEIR AGENTS) OF ANY VESSEL NAMED IN THE SCHEDULE OF VESSELS ATTACHED.

2. THE AMOUNT OF INSURANCE AND LIMIT OF LIABILITY IN RESPECT OF ANY ONE ACCIDENT OR OCCURRENCE IS $250,000.00 EACH VESSEL NAMED IN THE SCHEDULE.

3. AS A MATTER OF CONVENIECE ONE POLICY IS ISSUED COVERING THE VESSELS NAMED IN THE SCHEDULE, BUT AS A MATTER OF CONSTRUCTION EACH VESSEL IS TO BE DEEMED A SEPARATE INTEREST, SEPARATELY INSURED, AND IN ALL RESPECTS AS IF A SEPARATE POLICY WERE ISSUED AND THE POLICY IS TO READ AND APPLY ACCORDINGLY. THE INSURANCE ON ONE VESSEL IS NOT APPLICABLE TO ANY OTHER.

4. IT IS AGREED THAT THE INCUSION UNDER THIS POLICY OF MORE THAN ONE ASSURED SHALL NOT OPERATE TO INCREASE THE LIMIT OF LIABILITY ON EACH VESSEL NAMED IN THE SHCEDULE.

5. IT IS UNDERSTOOD AND AGREED THAT THE INDEMNITY PROVIDED BY THIS POLICY IS NOT RESTRICTED TO SUCH LIABILITY AS THE ASSURED MAY INCUR "AS OWNERS" BUT IS EXTENDED TO ALL THOSE LIABILITIES DESCRIBED WHICH AN ASSURED MAY INCUR IN CONNECTION WITH ANY VESSELS, WHETHER AS OWNER, JOINT VENTURER, CHARTERED SUB-CHARTERER, OPERATOR, LESSEE, AGENT OR OTHERWISE.

6. IT IS SPECIALLY AGREED THAT THIS POLICY IS EXTENDED (SUBJECT TO ALL ITS TERMS, CONDITIONS, LIMITS OF LIABILITY AND LIMITATIONS) TO ALSO COVER AND INSURE THE CONTRACTUAL LIABILITY ASSUMED BY THE ASSURED UNDER CONTRACT WITH THE UNDITED STATES OF AMERICA THROUGH ANY OF THEIR DEPARTMENTS (NAVY, ARMY, ETC.) OR UNDER CONTRACTS WITH OTHER USUAL AND INCIDENTAL TO THE OPERATIONS AND BUSINESS OF THE ASSURED.

7. IT IS SPECIALLY AGREED THAT THIS POLICY SHALL ALSO COVER LIABILITY TO EMPLOYEES ENGAGED AS "TANKERMEN" OR "BARGEMEN" TO LOAD OR UNLOAD OR HANDLE, VESSEL INSURED HEREIN, WHETHER DEEMED MEMBERS OF THE CREW OF SUCH VESSELS OR OTHERWISE. ALSO TO COVER LIABILITY TO EMPLOYEES ENGAGED AS "RIDING CREWS" ON VESSEL BEING TOWED BY TUGS INSURED HEREIN, WHETHER DEEMED MEMBER OF THE CREW OF THE VESSEL OR THE TUG OR OTHERWISE.

8. IT IS UNDERSTOOT THAT COVERAGE HERIN APPLICABLE TO MASTERS, CREW MEMBERS, TANKERMEN, BARGEMEN, RIDING CREWS OR OTHER VESSEL PERSONNEL, SHALL APPLY DURING THE ENTIRE PERIOD OF EMPLOYMENT WHICH INCLUDES WHILE SUCH PERSONNEL ARE AWAITING ASSINGMENT, TRAVELING, OR PROCEEDING TO OR FROM VESSELS INSURED HEREIN.

ENDORSEMENT NO. 1
CONTINUED

9. EMPLOYEES OF ONE ASSURED SHALL BE MEMBERS OF THE PUBLIC AS· THE ALL OTHER ASSUREDS: A CLAIM "IN REM" SHALL BE TREATED AS A CLAIM "IN PERSONAM"

10. PRIVILEGE IS HEREBY GRANTED FOR VESSELS TO BE USED IN JOINT VENTURES WITH OTHERS OR TO BE CHARTERED AND/OR LEASED AND/OR OPERATED BY OTHERS AND THIS INSURANCE IS EXTENDED TO COVER THE INTERESTS OF SUCH JOINT VENTURERS AND/OR CHARTERERS AND/OR LESSEES AND/OR OPERATORS (WITH PRIVILEGE TO ENDORSE SAME HEREON AS ADDITIONAL ASSURED IF DESIRED) AND UNDERWRITERS HEREBY WAIVE RIGHT OF SUBROGATION AGAINST SUCH JOINT VENTURERS AND/OR CHARTERERS AND/OR LESSEES AND/ OR OPERATORS.

11. UNDERWRITERS AGREE TO ACCEPT UNDER TERMS AND CONDITIONS OF THIS POLICY ANY ADDITIONAL VESSEL WHICH MAY BE ACQUIRED, CHARTERED, RENTED OR USED BY THE ASSURED. RISK TO ATTACH AT AND FROM THE MOMENT THE VESSEL OR VESSELS BECOME AT THE RISK OF THE ASSURED, WITH OR WITHOUT ADVICE NOTICE TO UNDERWRITERS, BUT THE ASSURED AGREES TO DECLARE SUCH VESSELS AS SOON AS PRACTICABLE AND PAY AN EQUITABLE ADDITIONAL PREMIUM TO BE AGREED UPON IN RESPECT TO VESSELS OCCASIONALLY CHARTERED, RENTED OR USED FOR SHORT PERIODS OF TIME NO NOTICE IS REQUIRED TO UNDERWRITERS BUT THE ASSURED AGREES TO KEEP A RECORD AND REPORT SAME UPON EXPIRATION AND EQUITABLE PREMIUM PAID COMPUTED IN SAME APPLICABLE TO SIMILAR VESSELS INSURED.

12. IT IS UNDERSTOOD AND AGREED THAT UNDERWRITERS HEREBY WAIVE ALL RIGHTS OF· SUBROGATION AGAINST SMITH-RICE CO., AND/OR SMITH-RICE DERRICK BARGES, INC. AND/OR ANY OF THEIR AFFILIATED AND/OR INTER-RELATED COMPANIES, ALSO ANY OTHER COMPANIES AND/OR U.S. GOVERMENT DEPARTMENTS WITH WHOM THE ASSURED HAS ENTERED INTO CONTRACTS PROVIDING FOR RELEASE OF LIABILITY.

13. TRADING WARRANTY - OPERATING IN PACIFIC OCEAN, COASTAL AND INLAND WATERS, MAINLY IN AND BETWEEN U.S. PACIFIC, BRITISH COLUMBIA AND ALASKA PORTS AND/ OR PLACES NOT BEYOND HAWAIIAN GLUNDS NOR BEYOND 155° WEST LONGITUDE (KODIAK ISLAND). HELD COVERED OUTSODE THESE LIMITS PROVIDED NOTICE GIVEN TO UNDERWRITERS AS SOON AS KNOWN BY THE ASSURED (HEAD OFFICE, SAN FRANCISCO) AND ADDITIONAL PREMIUM PAID AT EQUITABLE RATES TO BE AGREED.

14. THE ASSURED SHALL HAVE THE PRIVILEGE OF ARRANGING OTHER INSURANCE AGAINST ANY OF THE RISKS COVERED HEREIN, IN WHICH CASE THIS POLICY SHALL CONTINUE TO BE AVAILABLE IN ITS FULL AMOUNT BUT ONLY AS EXCESS OVER SUCH OTHER VALID AND COLLECTIBLE INSURANCE.

15. PRIVILEGE IS HEREBY GRANTED FOR THE ASSURED TO ARRANGE SUCH EXCESS INSURANCE AS THEY DESIRE WITHOUT PREJUDICE TO THIS POLICY.

16. IT IS AGREED THAT THE ASSURED WILL PAY AN ANNUAL FLAT PREMIUM OF $25,000.00 BASED ON CURRENT AND ANTICIPATED OPERATIONS DURING THE POLICY TERM IN THE EVENT OF ANY MATERIAL NEW ADDITIONAL OPERATIONS NOTICE TO BE GIVEN UNDERWRITERS AND ADDITIONAL PREMIUM PAID AT EQUITABLE RATES TO BE AGREED. IN THE EVENT OF ANY MATERIAL REDUCTION IN OPERATIONS NOTICE TO BE GIVEN UNDERWRITERS AND RETURN PREMIUM PAID AT EQUITABLE RATES TO BE AGREED, PROVIDED HOWEVER THAT THERE SHALL BE NO RETURN PREMIUM IF THE TOTAL OF ALL CLAIMS PAID OR INCURRED EXCEEDS 60% OF THE TOTAL PREMIUM PAID.

17. THIS POLICY MAY BE CANCELLED BY EITHER PARTY GIVING THE OTHER 30 DAYS' WRITTEN NOTICE. PREMIUM TO BE ADJUSTED PRO-RATA, IF CANCELLED BY UNDER-WRITERS AND USUAL SHORT TATE BASIS, IF CANCELLED BY THE ASSURED. IF CAN-CELLED BY COMPANY IT IS AGREED THAT ANY VESSEL AT SEA UPON DATE NOTICE OF CANCELLATION IS GIVEN AND VESSEL IS STILL AS SEA UPON EFFECTIVE DATE· OF CANCELLATION COVERAGE IS EXTENDED UNTIL ARRIVAL AT FIRST SAFE PORT.

ATTACHED TO AND FORMING PART OF SFH 592 OF THE TRAVELERS INDEMNITY COMPANY

ISSUED TO: RIG TENDERS, INC., ETAL

DATED AT: SAN FRANCISCO, CALIFORNIA
MAY 8, 1970

THE TRAVELERS INDEMNITY COMPANY
BRANDT MARINE DEPARTMENT

BY _____

ENDORSEMENT NO. 3

(SPECIFIC NAMED ADDITIONAL ASSUREDS)

IT IS HEREBY AGREED THAT THE FOLLOWING NAMED COMPANIES AND/OR ANY OF THEIR SUBSIDIARY, AFFILIATED, OR ASSOCIATED COMPANIES ARE SPECIALLY NAMED AS ADDITIONAL ASSUREDS AS RESPECTS THOSE VESSELS INSURED HEREIN WHILE SUCH VESSELS ARE UNDER CHARTER, OR IN THEIR CUSTODY, OR ENGAGED IN SERVICES FOR THEM.

1. GENERAL MARINE TERNSPORTATION (SANTA BARBARA) INC.
2. PAN AMERICAN PETROLEUM CORPORATION
3. MARATHON OIL COMPANY
4. COOK INLET PIPE LINE COMPANY
5. PHILLIPS PETROLEUM COMPANY
6. PENDEX MARINE ADVISORS, INC. AND/OR STANDARD OIL CO.
7. TEXACO, INC.
8. BROWN & ROOT, INC.
9. J. RAY MC DERMOTT & CO.

FURTHER, IT IS AGREED THAT AS RESPECTS THOSE VESSELS INSURED HEREIN UNDER CHARTER TO OR IN CUSTODY OF, OR ENGAGED IN SERVICES FOR PAN AMERICAN PETROLEUM CORPORATION THE FOLLOWING CLAUSE SHALL ALSO APPLY.

1. ALSO TO COVER, AS ADDITIONAL ASSUREDS, ANY CHARTERER (ITS JOINT OWNER OR OWNERS), ANY DRILLING CONTRACTOR, AND ANY PARTY OR PARTIES FOR WHOM THE VESSEL IS RENDERING SERVICES (WITH PRIVILEGE TO ENDORSE THEIR NAMES HEREON AS SPECIFIC NAMES ADDITIONAL ASSUREDS, IF DESIRED).

2. TO ELIMINATE CONTROVERSIES, THE EXPENSE AND INCONVENIENCE THERETO, AS BETWEEN OWNER, CHARTER (ITS JOINT OWNER OR OWNERS, IF ANY). THE DRILLING CONTRACTOR AND OTHER ADDITONAL ASSUREDS, IT IS AGREED THAT THE UNDER- WRITERS SHALL NOT HAVE ANY RIGHT OF SUBROGATION (EQUITABLE OR BY ASSIGN- MENT, EXPRESS OR IMPLIED, LOAN RECEIPT OR OTHERWISE) AGAINST CHARTERER (ITS JOINT OWNER OR OWNERS, IF ANY), THE DRILLING CONTRACTOR, AND OTHER ADDITIONAL ASSUREDS, THEIR INSURERS OR THE VESSEL OWNER, OPERATED OR BARE BOAT CHARTERED BY EITHER OF THE PARTIES, AND THE RIGHTS OF SUBROGATION IN FAVOR OF OR AGAINST ANY OF THE ABOVE NAMED ARE HEREBY WAIVED.

ATTACHED TO AND FORMING PART OF THE TRAVELERS INDEMNITY COMPANY : POLICY NO: SFH 592

ISSUED TO: RIG TENDERS, INC., ETAL

DATED AT: SAN FRANCISCO, CALIFORNIA MAY 8, 1970

THE TRAVELERS INDEMNITY COMPANY
BRANDT MARINE DEPARTMENT
BY _Arthur Landau_